UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYCHAL ANDRA REED,<br>CDCR #AE-9821,<br><br>                                    Plaintiff,<br><br>         vs.<br><br>D. PARAMO; J. LUNA; E. ZENDEJAS;<br>C. CRESPO; N. SCHARR; P. COVELLO;<br>A. GARCIA; and N. MARIENTES,<br><br>                                    Defendants. | Case No.:  18-CV-361 JLS (LL)<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTIONS TO DISMISS SECOND<br>AMENDED COMPLAINT FOR<br>FAILING TO STATE A CLAIM**<br><br>(ECF Nos. 65, 78) |

Plaintiff Mychal Andra Reed, currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), is proceeding pro se and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Currently before the Court are the Motions to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants C. Crespo, J. Luna, D. Paramo, and E. Zendejas (ECF No. 65) and Defendants N. Marientes, N. Scharr, P. Covello, and A. Garcia (ECF No. 78).  Plaintiff has filed an Opposition (ECF No. 69) and two additional "responses" (ECF Nos. 83, 84) to the Motions.  Defendants have not filed Replies.

/ / /

1

The matters were taken under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF Nos. 66, 82. Having carefully considered Defendants' Motions, Plaintiff's SAC and his Oppositions, and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions as follows.

## BACKGROUND

On September 5, 2017, Plaintiff was "written up" by Defendant Correctional Officer Zendejas for "'allegedly' not obeying an order to 'get down.'" SAC at 4. Plaintiff is "deaf/hearing impaired." *Id.* He "immediately appealed" the rules violation report ("RVR") issued by Zendejas. *Id.* The RVR, however, was "affirmed" by Zendejas' superior, Defendant Lieutenant Luna. Plaintiff claims it was not humanly "possible for him to have heard the 'alleged' order." *Id.* "After several letters" to Zendejas' "superiors," Plaintiff alleges that "the only thing that has occurred is 'retaliation'" by Zendejas and "more 'fabricated' RVR[]s being generated." *Id.* Plaintiff claims Zendejas "coerced" Correctional Officer Ochoa, who is not named as a Defendant, to "trash Plaintiff's cell to incite him to anger" on November 9, 2017. *Id.*

Plaintiff alleges that, during his September 23, 2017 disciplinary hearing regarding the RVR issued by Zendejas, Luna "refused to allow Plaintiff to present witnesses on his behalf." *Id.* at 5. As a result, Plaintiff was "found guilty" and the "RVR's untrue statements were permanently placed on his prison record." *Id.*

On January 15, 2018, Plaintiff was "handed [an] RVR disciplinary write up" that "falsely" alleged that he had "disobeyed an order" issued by Zendejas. *Id.* at 7. Plaintiff claims he has "absolutely no idea of the 'alleged' encounter" which purportedly occurred on January 12, 2017. *Id.* On this date, Plaintiff alleges it was raining and he was not wearing his hearing aid because "it will short out if it gets wet." *Id.* Plaintiff claims he "did not have any encounter" with Zendejas on January 12, 2017. *Id.*

Plaintiff wrote Defendant Warden Paramo "several letters," along with "several other superiors" at RJD "concerning their subordinates (particularly [correctional officer ("c/o")] Zendejas)" purportedly "generating phony ('fabricated') disciplinary write ups,"

2

"violations of CDCR's" code of conduct and ethics, and "persistent harassment and retaliation" by Zendejas. *Id.* at 8.

Plaintiff alleges it is "common protocol" for CDCR officials to "retaliate against inmates who complain against 'crooked' c/o[]s, by marring inmates c-files (prison records) with 'fabricated' discipline documents." *Id.* at 9. Plaintiff further alleges that "fabricated" documents are placed in prisoners' "C-file regardless of [whether] his or her due process rights were violated" during "mock RVR hearings." *Id.*at 10. Plaintiff claims that CDCR officials "keep 'needling' inmates so they will eventually 'snap', so prison officials['] abusive and 'sadistic' conduct can then be justified." *Id.* at 10. Plaintiff alleges that prison officials are "causing him mental and emotional damage which will eventually lead to physical ailments." *Id.*

Plaintiff also claims that prison officials are "intercepting" his legal mail. *Id.* at 11. He claims that his "efforts to file this complaint have been hampered (hindered)" by RJD correctional officers who refused to "e-file his complaint" by "falsely" claiming they had no "knowledge" of the Southern District of California's "general order" requiring all complaints to be electronically filed. *Id.*

Plaintiff claims an unspecified "defendant was made aware" of his attempts to electronically file a "complaint to this court" by placing the entire yard on "lockdown." *Id.* Plaintiff alleges that RJD prison officials claim that the lockdown was due to a riot was "contrived (erroneous) reasoning." *Id.* at 12. Plaintiff claims "there has been no riots or threats of any riots." *Id.* Plaintiff "believes retaliation by defendant is also due to him contacting the 'Office of Internal Affairs' regarding this 'pending civil rights complaint in another court (U.S.[D.C.] Case No. cv-12-10727-VAP-JCG).'" *Id.* Paramo let Plaintiff "know he was aware of [Plaintiff's contact with the Office of Internal Affairs] via correspondence letter." *Id.*

Plaintiff had a disciplinary hearing on November 16, 2018, presided over by Defendant Sergeant Scharr, for an "alleged" fight with another inmate. *Id.* at 13. Plaintiff was found guilty and "given 30 days no dayroom," while the other inmate was given "only

15 days no dayroom." *Id.* Plaintiff "believes [the] hearing officer's actions were 'overtly' prejudice toward him" because the other inmate is "white and [Plaintiff] is black." *Id.* Plaintiff further "believes [Scharr] has been retaliating against him through subordinates via 'harassment'" by "using each and every opportunity to place [Plaintiff] in an 'uncompromising' position." *Id.*

On January 6, 2019, Plaintiff alleges Defendant Correctional Officer Garcia "trashed" Plaintiff's cell and subsequently issued a "fraudulent" RVR against Plaintiff. *Id.* Plaintiff was "found guilty in RVR hearing" and lost phone privileges for fifteen days based on Garcia's "false" statements at the hearing. *Id.* Plaintiff claims his due process rights were violated because the hearing officer, Defendant Sergeant Marientes, refused to speak to a witness requested by Plaintiff. *See id.*

Plaintiff was transferred to Wasco State Prison ("WSP") on April 3, 2019, for his "eventual transfer to Valley State Prison (VSP) to attend a scheduled 4/8/19 conference at Eastern District Court in Fresno." *Id.* at 14. Plaintiff "eventually stayed at WSP for 4 days in 'solitary' confinement quarters akin to the 'hole.'" *Id.* While housed in confinement, Plaintiff was "made to stay in his cell 24 hours a day, no bedding (bed mat, sheets or quilt) was provided, no shower, no TTY-phone access." *Id.*

Plaintiff was "transferred back" to RJD on April 6, 2019, "without ever being transferred to VSP or court." *Id.* Plaintiff discovered that RJD officials were "alerted by the deputy attorney general" on April 2, 2019, that his "case was now closed" and there was no need for him to appear at the April 8, 2019 conference in the Eastern District of California. *Id.* Plaintiff alleges that Defendant Warden Covello "used [this] situation to 'retaliate' against Plaintiff for utilizing his First Amendment rights." *Id.*

Plaintiff initiated this action on February 9, 2018, seeking leave to file by mail his civil rights complaint. *See generally* ECF No. 1. Plaintiff's First Amended Complaint ("FAC") against Defendants Paramo, Luna, Zendejas, and Crespo was filed on February 26, 2018, alleging five claims for violation of his First and Eighth Amendment rights. *See generally* ECF No. 3.

Those Defendants moved to dismiss Plaintiff's claims against them in his FAC on July 30, 2018. *See generally* ECF No. 15. On January 31, 2019, the Court granted in part and denied in part their motion. *See generally* ECF No. 30. Specifically, the Court dismissed Plaintiff's Eighth Amendment claims against Paramo, Luna, Zendejas, and Crespo; dismissed Plaintiff's First Amendment claims against Crespo and Luna; and dismissed Plaintiff's First Amendment claims against Zendejas as they related to the September 5, 2017 and November 9, 2017 incidents. *See id.* at 21. The Court granted Plaintiff leave to file an amended complaint, explicitly warning him that "[a]ny claims not re-alleged in the amended complaint will be considered waived." *Id.* at 21–22.

Plaintiff filed the operative SAC on May 9, 2019, dropping Crespo and adding Defendants Covello, Garcia, Marientes, and Scharr. *See generally* ECF No. 60. Plaintiff's SAC alleges eight "counts" for violation of Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment constitutional rights. *See id.* at 4–15. Plaintiff seeks injunctive relief, attorney fees, and compensatory and punitive damages. *See id.* at 17.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Bryan v. City of Carlsbad*, 207 F. Supp. 3d 1107, 1114 (S.D. Cal. Mar. 20, 2018).

Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss," *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), including the exhibits attached to it. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) (holding that "material which is properly submitted as part of the complaint may

be considered" in ruling on a Rule 12(b)(6) motion to dismiss). Exhibits that contradict the claims in a complaint, however, may fatally undermine the complaint's allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims") (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[Courts] are not required to accept as true conclusory allegations [that] are contradicted by documents referred to in the complaint."))); *see also Nat'l Assoc. for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (holding that courts "may consider facts contained in documents attached to the complaint" in determining whether the complaint states a claim for relief).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1228-29 (9th Cir. 2017). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678–79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959–60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Therefore, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility

and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotes omitted); *accord Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## ANALYSIS

### I. Claims Against Crespo

Defendant Crespo seeks to dismiss Plaintiff's claims against her because Plaintiff failed to rename her as a Defendant in his SAC. *See* ECF No. 65-1 at 5.

Plaintiff initially named Crespo in his FAC, filed February 26, 2018, *see generally* ECF No. 3, which Defendants moved to dismiss. *See generally* ECF No. 15. On January 31, 2019, the Court granted in part and denied in part that motion. *See* ECF No. 30 at 21–22. Plaintiff was granted leave to file an amended pleading and cautioned that "[a]ny claims not re-alleged in the amended complaint w[ould] be considered waived." *Id.* (citing *Lacey*, 693 F.3d at 925, 928).

Plaintiff filed his SAC on May 9, 2019. *See generally* ECF No. 60. In his SAC, Plaintiff no longer names Crespo as a Defendant. *See id.*; *see also* ECF No. 65-1 at 5. Consequently, all claims against Crespo are considered waived and the Court **DISMISSES** Crespo from this action. *See Lacey*, 693 F.3d at 925, 928.

### II. Eighth Amendment Claims

All Defendants seek to dismiss Plaintiff's Eighth Amendment claims on the grounds that Plaintiff fails to allege any factual allegations sufficient to support an Eighth Amendment claim. *See* ECF No. 65-1 at 6–7; ECF No. 78 at 10–12.

The conditions under which a prisoner is confined and the treatment they receive are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and

7

decency . . . ,' against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). Although the Eighth Amendment does not mandate that prisons be comfortable, *see Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), or that they provide every amenity a prisoner might find desirable, *see Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), it also does not permit inhumane prison conditions. *See Farmer*, 511 U.S. at 832.

An inmate complaining of conditions of confinement must allege facts that, if true, would satisfy both prongs of a bifurcated test. First, a plaintiff must allege that, objectively, the deprivation alleged is "sufficiently serious" such that it results in the denial of "the minimal civilized measure of life's necessities." *Id*. at 834. "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. 'The more basic the need, the shorter the time it can be withheld.'" *Id.* (citing *Ray*, 682 F.2d at 1259).

Second, from a subjective point of view, a plaintiff must allege that the defendants acted with a sufficiently culpable state of mind, *i.e.*, with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, Defendants argue that "Plaintiff fails to allege that he has suffered any serious deprivation, and these are the exact same allegations that the Court previously found lacking to support an Eighth Amendment claim." ECF No. 65-1 at 7. In his Opposition, Plaintiff claims that his allegations that he was placed in solitary confinement for four days while housed at WSP demonstrate a violation of his Eighth Amendment rights. *See* ECF No. 69 at 5.

The Court finds that Plaintiff has failed plausibly to allege any facts that would demonstrate that any of the named Defendants had any involvement with decisions made by WSP officials and, consequently, that Plaintiff fails to allege that Defendants acted with the "deliberate indifference" required to support the subjective component of his Eighth Amendment claim. Plaintiff offers no facts that suggest Defendants were actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that each of them "also dr[e]w th[at] inference." *Farmer*, 511 U.S. at 837; *Iqbal*, 556 U.S. at 678. Accordingly, the Court **GRANTS** Defendants' Motions and **DISMISSES** Plaintiff's Eighth Amendment claims in their entirety.

## III. Fifth Amendment Claims

Defendants also move to dismiss Plaintiff's Fifth Amendment claims found in Counts 2 and 7 on the grounds that he has failed to allege that any of the named Defendants are federal actors. *See* ECF No. 65-1 at 8; ECF No. 78 at 12–13.

The "Fifth Amendment's due process clause only applies to the federal government." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (citing *Betts v. Brady*, 316 U.S. 455, 462 (1942)). Here, Defendants are alleged to be state actors. *See generally* SAC at 2–3. Consequently, the Court **GRANTS** Defendants' Motions and **DISMISSES** Plaintiff's Fifth Amendment claims in their entirety.

## IV. Fourteenth Amendment Due Process Claims

Defendants also move to dismiss Plaintiff's Fourteenth Amendment due process claims. *See* ECF No. 65-1 at 8–10; ECF No. 78 at 13–14.

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v.*

*Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Although the level of the hardship must be determined on a case-by-case basis, and "[i]n *Sandin*'s wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486–87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064–65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

/ / /

/ / /

### A. Claims Against Luna

Defendant Luna moves to dismiss Plaintiff's Fourteenth Amendment due process claims against him found in Count 2 of Plaintiff's SAC. *See* ECF No. 65-1 at 8–10.

In his SAC, Plaintiff alleges that Luna was the hearing officer at his September 23, 2017 disciplinary hearing. *See* SAC at 5. He claims that Luna "refused to allow Plaintiff to present witnesses on his behalf." *Id.* As a result, Plaintiff was found guilty of the charges and the "RVR's untrue statements were permanently placed on his prison record." *Id.* In his Opposition, Plaintiff argues that "Luna undeniably violated" his due process rights by "denying him the right to present witnesses during his September 23, 2017 disciplinary RVR hearing." ECF No. 69 at 1.

In his SAC, Plaintiff does not allege any facts to show the type of "atypical and significant hardship" required to invoke a liberty interest under *Sandin*. "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223 (quoting *Sandin*, 515 U.S. at 484). Plaintiff alleges no conditions of confinement arising from the actions of Luna that "present[ed] a dramatic departure from the basic conditions of [his] indeterminate sentence." *Sandin*, 515 U.S. at 485–86. The Court therefore finds that Plaintiff has failed to allege deprivations legally sufficient to invoke a protected liberty or property interest under *Sandin*. Consequently, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's Fourteenth Amendment claims against Luna.

### B. Claims Against Marientes and Garcia

Defendants Marientes and Garcia also move to dismiss Plaintiff's Fourteenth Amendment due process claims against them found in Count 6 of Plaintiff's SAC. *See* ECF No. 78 at 14–16.

On January 6, 2019, Plaintiff alleges Garcia "trashed" Plaintiff's cell and subsequently issued a "fraudulent" RVR against Plaintiff. SAC at 13. Plaintiff was "found

guilty in RVR hearing" and lost phone privileges for fifteen (15) days based on Garcia's "false" statements at the hearing. *Id.* Plaintiff claims his due process rights were violated because the hearing officer, Marientes, refused to speak to a witness requested by Plaintiff. *See id.*

Once again, Plaintiff did not allege any facts to show the type of "atypical and significant hardship" required to invoke a liberty interest under *Sandin*. Here, Plaintiff claims that he lost phone privileges because of Defendants' actions. The temporary and brief loss of such privileges as a result of Plaintiff's disciplinary conviction, however, does not constitute "atypical and significant" hardship under *Sandin*. *See Davis v. Small*, 595 Fed. App'x 689, 691 (9th Cir. 2014) ("The Due Process Clause itself does not give rise to a protected liberty interest in . . . phone and yard privileges."). Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's Fourteenth Amendment due process claims against Marientes and Garcia.

### C. *Claims Against Covello*

Finally, Defendant Covello moves to dismiss Plaintiff's Fourteenth Amendment due process claims against him on the grounds that they "are uncertain" and, "other than stating that Defendant Covello violated his 'due process rights[,]' there are no allegations" to support such a claim. ECF No. 78 at 16.

The Court agrees that Plaintiff has not alleged any facts that could be liberally construed as a Fourteenth Amendment due process claim against Covello and that Plaintiff fails to shed any light on this claim in his Opposition. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Because Plaintiff's SAC is devoid of any factual allegations to support a Fourteenth Amendment due process claim against Covello, the Court **GRANTS** Defendants' Motion and **DISMISSES** these claims against Covello.

/ / /

/ / /

18-CV-361 JLS (LL)

## V. Fourteenth Amendment Equal Protection Claims

Defendant Scharr moves to dismiss the Fourteenth Amendment equal protection claim against him on the grounds that it is "premised on conjecture and speculation." ECF No. 78 at 13.

In his SAC, Plaintiff alleges Scharr presided over a disciplinary hearing on November 16, 2018, for an "alleged" fight between Plaintiff and another inmate. SAC at 13. Plaintiff was found guilty and "given 30 days no dayroom," while the other inmate was given "only 15 days no dayroom." *Id.* Plaintiff "believes hearing officer's actions were 'overtly' prejudice toward him" because the other inmate is "white and [Plaintiff] is black." *Id.*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 472 U.S. 432, 439 (1985). A plaintiff who is a member of a "suspect" class must show that the "defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Conclusory allegations of discrimination are insufficient to withstand a motion to dismiss, however, unless they are supported by facts that may prove invidious discriminatory intent or purpose. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show that the defendant "acted in a discriminatory manner and that the discrimination was intentional." *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Plaintiff argues in his Opposition that Scharr "overtly discriminated against him when he doled out 30 days of loss of privileges to Plaintiff (no dayroom) who is black" and only "15 days of loss of privileges" to the other inmate "who is white." ECF No. 69 at 4. Defendants argue that Plaintiff's "allegations are 'insufficient both because they are conclusory and because they are based on 'information and belief,' without providing 'the factual basis for the belief.'" ECF No. 78 at 13–14 (citing *Tatung Co. v. Shu Tze Hsu*, 43 F.Supp. 3d 1036, 1062 (C.D. Cal. 2014) (quoting *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993))).

The Court agrees that Plaintiff's Equal Protection claim against Scharr fails to provide sufficient facts to show intentional discrimination. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's Fourteenth Amendment Equal Protection claims against Scharr.

## VI. First Amendment Retaliation Claims

Defendants move to dismiss Plaintiff's claims for retaliation in violation of his First Amendment rights. *See* ECF No. 65-1 at 11–13; ECF No. 78 at 6–9.

A First Amendment retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, a plaintiff must allege that the retaliated-against conduct is protected. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

Second, a plaintiff must allege the defendants took adverse action against him. *Id.* at 567. "[T]he mere threat of harm can be an adverse action," *Brodheim*, 584 F.3d at 1270, and the adverse action need not be an independent constitutional violation. *Pratt*, 65 F.3d at 806.

Third, a plaintiff must allege a causal connection between the adverse action and the protected conduct. *Watison*, 668 F.3d at 1114. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which

retaliation can be inferred is sufficient to survive dismissal. *Id.* (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")).

Fourth, a plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11.

Fifth and finally, a plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114–15.

### A.   *Claims Against Zendejas*

Defendant Zendejas moves to dismiss Plaintiff's First Amendment retaliation claims against her arising from the September 5, 2017 incident. *See* ECF No. 65-1 at 12–13. This claim in found in "Count 1" of Plaintiff's SAC. *See* SAC at 4. Plaintiff also brings retaliation claims against Zendajas in Counts 3, 4, and 5 of his SAC, *see id.* at 6–12, which are not addressed by the present Motions. *See generally* ECF Nos. 65-1, 78.

On September 5, 2017, Plaintiff claims he was "written up" by Zendejas for "'allegedly' not obeying an order to 'get down[.']" *Id.* at 4. Plaintiff is "deaf/hearing impaired." *Id.* He "immediately appealed" the RVR issued by Zendejas. *Id.* The RVR, however, was "affirmed" by Zendejas's superior, Luna. *Id.* Plaintiff claims it was not humanly "possible for him to have heard the 'alleged' order." *Id.* "After several letters" to Zendejas' "superiors," Plaintiff alleges that "the only thing that has occurred is 'retaliation'" by Zendejas and "more 'fabricated' RVR's being generated." *Id.*

Defendants argue that "Plaintiff fails to raise any facts demonstrating that Defendant Zendejas was substantially motivated by Plaintiff's complaint against her when she issued him the September 5, 2017 Rules Violation Report." ECF No. 65-1 at 12. Plaintiff states
/ / /

in his Opposition that Zendejas is an abusive and "retaliatory correctional officer under the color of law." ECF No. 69 at 1.

In its January 31, 2019 Order, the Court found that "Plaintiff ha[d] failed to allege facts that Defendant Zendejas prepared the September 5, 2017 RVR (Claim 1) because of Plaintiff's protected conduct to file grievances." ECF No. 30 at 13. Specifically, the Court found that the documents Plaintiff had attached to his FAC "regarding Defendant Zendejas are all dated after the September 5, 2017 RVR was issued." *Id.* The Court permitted Plaintiff leave to file an amended pleading to "make a plausible allegation that Defendant Zendejas was aware of Plaintiff's complaints about her and that the complaints were the substantial or motivating factor for the false RVR." *Id.* (citing *Brodheim*, 584 F.3d at 1271). Not only has Plaintiff failed even to attempt to comply with the Court's January 31, 2019 Order by adding factual allegations to support such a claim, but he attaches the same documents showing his complaints regarding Zendejas were submitted *after* the alleged September 5, 2017 incident. *See* SAC at 73–83. Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's First Amendment retaliation claims against Zendejas arising from the September 5, 2017 incident.

### B. *Claims Against Garcia and Marientes*

Defendants Garcia and Marientes also move to dismiss Plaintiff's First Amendment retaliation claims against them. *See* ECF No. 78 at 7–8.

In his SAC, Plaintiff claims that, on January 6, 2019, Garcia "trashed" Plaintiff's cell and subsequently issued a "fraudulent" RVR against Plaintiff. *Id.* Plaintiff was "found guilty in RVR hearing" and lost phone privileges for fifteen days based on Garcia's "false" statements at the hearing. *Id.* Plaintiff claims his due process rights were violated because the hearing officer, Marientes, refused to speak to a witness requested by Plaintiff. *See id.*

These allegations are devoid of any facts that would support a First Amendment claim against either Garcia or Marientes. Plaintiff fails to allege any facts to support any of the five elements of a First Amendment retaliation claim as set forth in *Brodheim*, 584

/ / /

18-CV-361 JLS (LL)

F.3d at 1269.  The Court therefore **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's First Amendment retaliation claims against Garcia and Marientes.

### C.    *Claims Against Scharr*

Finally, Defendant Scharr moves to dismiss Plaintiff's First Amendment retaliation claims against him.  *See* ECF No. 78 at 8.

Plaintiff alleges that, on November 16, 2018, Scharr presided over a disciplinary hearing involving Plaintiff.  *See* SAC at 13.  Plaintiff alleges that he "believes Sgt. Scharr has been 'retaliating' against him through his subordinates via 'harassment'" by "using each and every opportunity to place him (Plaintiff) in an 'uncompromising' position." *Id.*

Scharr argues that "Plaintiff cannot maintain a claim on his 'beliefs' without supporting factual allegations."  ECF No. 78 at 8.  Further, "Plaintiff fails to show that Scharr's actions were because of Plaintiff's exercise of a protected right, or that Plaintiff suffered any harm." *Id.*

The Court agrees that Plaintiff fails to even attempt to allege facts to support each element of a retaliation claim against Scharr.  As previously stated, a pleading does not necessarily have to provide detailed factual allegations, but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Because Plaintiff's First Amendment retaliation claims against Scharr fail to meet this standard, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's First Amendment retaliation claims against Scharr.

## VII.    *Respondeat Superior* **Claims**

Both Defendant Paramo and Defendant Covello move to dismiss all claims against them on the grounds that "[g]overnment officials cannot be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." ECF No. 65-1 at 13 (citing *Iqbal*, 556 U.S. at 676; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)); ECF No. 78 at 16 (citing *Iqbal*, 556 U.S. at 676; *Pembaur*, 475 U.S. at 479; *Monell*, 436 U.S. at 691).

### A. Claims Against Paramo

Plaintiff claims he wrote "several letters" to Paramo, the Warden of RJD, as well as "several other superiors at [RJD] concerning their subordinates (particularly c/o Zendejas)" and their "generating phony ('fabricated') disciplinary write ups" in violation of CDCR policy. SAC at 8. Plaintiff further alleges that these complaints have "been ignored or inadequately investigated" and, as a result, Zendejas "has remained in her position . . . where she continues to retaliate at will against Plaintiff." *Id.*

Paramo argues that, even if Plaintiff sent letters to him, there are "no facts establishing that Defendant Paramo received, read, or reviewed those letters, and then knowingly failed to take any action in retaliation for Plaintiff's exercise of a protected right." ECF No. 65-1 at 13–14.

In its January 31, 2019 Order, the Court found that "Plaintiff had sufficiently alleged a First Amendment retaliation claim as to Defendant Paramo." ECF No. 30 at 19. The allegations in Plaintiff's FAC that the Court found sufficiently plead are virtually identical to the factual allegations in Plaintiff's SAC as to Defendant Paramo's alleged involvement. The Court therefore **DENIES** Defendants' Motion as to Plaintiff's First Amendment retaliation claims against Paramo.

### B. Claims Against Corvello

Plaintiff claims that he was transferred to WSP to attend a "conference at Eastern District court in Fresno," which was scheduled for April 8, 2019. SAC at 14. Plaintiff alleges that he was housed there for four days in "solitary confinement," where he was "made to stay in his cell 24 hours a day, no bedding (bed mat, sheets or quilt) was provided, no shower, no TTY-phone access," and no change of clothes. *Id.* Plaintiff was transferred back after four days, however, and claims he later "found out that the [RJD] prison officials were alerted by the deputy attorney general on April 2, 2019 that his case was now closed" and there was no need to attend the court conference. *Id.* Plaintiff claims Covello, as Warden of RJD, "used [the] situation to 'retaliate' against Plaintiff for utilizing his First Amendment rights." *Id.*

18-CV-361 JLS (LL)

Covello argues that "[t]here are no specific allegations showing that Covello actually knew of, or engaged in, any adverse action against Plaintiff because Plaintiff engaged in protected conduct." ECF No. 78 at 9. The Court agrees that Plaintiff has failed to allege facts sufficient to support any element of a retaliation claim against Covello. Although Plaintiff must allege that the retaliated-against conduct is protected, *Watison*, 668 F.3d at 1114, Plaintiff fails to identify what "protected conduct" he was engaging in at the time he was transferred to WSP. He further fails to allege how Covello was aware that Plaintiff was purportedly engaging in such conduct.

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986)); *see also Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim."). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff has not stated a claim against Covello because Plaintiff fails to allege any facts that show Covello had any direct involvement in Plaintiff's transfer to another prison or that Covello was aware of Plaintiff filing grievances. Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's First Amendment retaliation claims against Covello.

## VIII. Leave to Amend

A *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the deficiencies cannot be cured by amendment. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

/ / /

19

The Court previously granted Plaintiff leave to amend his Eighth Amendment claims against Paramo, Luna, Zendejas, and Crespo; his First Amendment retaliation claims against Crespo and Luna; and his First Amendment retaliation claims against Zendejas as they related to the September 5 and November 9, 2017 incidents. *See* ECF No. 30 at 21. Plaintiff, however, waived his claims against Crespo, *see supra* page 7, and failed to allege additional facts to cure the previously identified deficiencies in either his First Amendment retaliation claim against Zendejas related to the September 5, 2017 RVR, *see supra* page 16, or his Eighth Amendment claims against Paramo, Luna, Zendejas, and Crespo. *See supra* page 8.

The Court therefore **DISMISSES WITH PREJUDICE** Plaintiff's Eighth Amendment causes of action against Paramo, Luna, Zendejas, and Crespo and Plaintiff's First Amendment retaliation claim against Zendejas to the extent it is predicated on the September 5, 2017 RVR. *See, e.g.*, *Davis v. Powell*, 901 F. Supp. 2d 1196, 1222 (S.D. Cal. 2012) ("Because [Plaintiff] could not plead any additional facts to cure the deficiencies in his pleadings and has already been given leave to amend, he should not be given further leave to amend his claims."). All other causes of action dismissed pursuant to this Order are **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions (ECF Nos. 65, 78). Specifically, the Court **GRANTS** Defendants' Motions and **DISMISSES WITH PREJUDICE** (1) Plaintiff's Eighth Amendment causes of action against Defendants Paramo, Luna, Zendejas, and Crespo; and (2) Plaintiff's First Amendment cause of action against Zendejas to the extent it is predicated on the September 5, 2017 RVR. The Court also **GRANTS** Defendants' Motions and **DISMISSES WITHOUT PREJUDICE** (1) Plaintiff's Eighth Amendment causes of action against all other Defendants, and (2) all other causes of action against Defendants Crespo, Scharr, Covello, Garcia, and Marientes. Defendants' Motions are otherwise **DENIED**.

/ / /

18-CV-361 JLS (LL)

Plaintiff **MAY FILE** an amended complaint, if any, <u>on or before November 1, 2019</u>. Should Plaintiff elect not to file an amended complaint by that deadline, this action will proceed on Plaintiff's surviving causes of action; however, should Plaintiff choose to file an amended complaint, it must cure the deficiencies noted herein and must be complete in itself without reference to the original complaint.  *See* S.D. Cal. CivLR 15.1.  *Any claims not re-alleged in the amended complaint will be considered waived.  See Lacey*, 693 F.3d at 925, 928.

**IT IS SO ORDERED**.

Dated:  October 15, 2019

Hon. Janis L. Sammartino
United States District Judge