UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| MYCHAL ANDRA REED, | Case No.: 18-cv-00361-JLS (DEB) |
|---|---|
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| DANIEL PARAMO, et al., | |
| Defendants. | **[DKT. NO. 181]** |

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rules 72.1(e) and 72.3(e).

## I.    INTRODUCTION

Plaintiff Mychal Andra Reed is a state prisoner proceeding pro se. On February 26, 2018, he filed a complaint pursuant to 42 U.S.C. § 1983 alleging R.J. Donovan Correctional Facility ("RJD") staff, including former Warden Daniel Paramo and Correctional Officer E. Zendejas, retaliated against him for filing grievances. Dkt. No. 3.

Before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 181. Plaintiff filed an Opposition and two "Additional Opposition Response[s]." Dkt. Nos. 190, 202, 204. Defendants filed a reply. Dkt. No. 209.

Having reviewed the parties' pleadings and supporting evidence, the Court recommends GRANTING in part and DENYING in part Defendants' Motion.

## II.     PROCEDURAL BACKGROUND

On May 9, 2019, following the Court's ruling on Defendants' Motion to Dismiss (Dkt. No. 30), Plaintiff filed an Amended Complaint. Dkt. No. 60 (docketed on the Court's case management/electronic case filing ("CM-ECF") system as the "Second Amended Complaint"). Plaintiff's Second Amended Complaint alleged eight "counts" of constitutional violations by Defendants C. Crespo, J. Luna, Paramo, Zendejas, N. Marientes, N. Scharr, P. Covello, and A. Garcia. Dkt. No. 60.

On May 30, 2019 and July 30, 2019, Defendants filed Motions to Dismiss Plaintiff's Second Amended Complaint. Dkt. Nos. 65, 78. The Court dismissed all claims except those against Paramo (for "ignor[ing] or inadequately investigat[ing]" several complaints about Zendejas) and Zendejas (for coercing another officer to trash Plaintiff's cell, pointing a rifle at Plaintiff, and fabricating a Rules Violation Report ("RVR")). Dkt. Nos. 30, 85.

On November 15, 2019, Paramo and Zendejas filed an Answer denying Plaintiff's allegations. Dkt. No. 95.

On November 4, 2020, Paramo and Zendejas filed a Motion for Summary Judgment arguing: (1) the undisputed facts establish Plaintiff cannot prevail on his remaining claims; and (2) they are entitled to qualified immunity because their "actions were reasonable and would not have violated [Plaintiff's] constitutional rights." Dkt. No. 181 at 13–19, 22.[1] On November 6, 2020, the Court issued Plaintiff a notice pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1998) informing Plaintiff about the significance of Defendants' Motion. Dkt. No. 182. On November 23, 2020, and January 5 and 6, 2021, Plaintiff filed Oppositions contending

_____

[1]     The Court's citations to documents filed with the Court refer to the page numbers assigned by the CM-ECF system.

Paramo was informed of "improper staff behavior toward [Plaintiff]," and the Court already determined Defendants violated Plaintiff's First Amendment rights in its orders ruling on Defendants' Motions to Dismiss. Dkt. Nos. 190 at 4–6; 202; 204 at 20.[2] On January 22, 2021, Defendants filed a Reply asserting Plaintiff "fail[ed] to put forth any evidence showing that Defendants are not entitled to summary judgment." Dkt. No. 209 at 4.

## III.    SUMMARY OF PLAINTIFF'S CLAIMS

At all relevant times, Plaintiff was a "deaf/hearing impaired" inmate at RJD. Dkt. No. 60. at 1, 4.[3]

In or around 2012, Plaintiff filed a "Civil Rights complaint" against Paramo that is pending "in another court." *Id.* at 12.

---

[2]    Unlike motions to dismiss, motions for summary judgment focus on evidence beyond the complaint and consider whether the moving party is entitled to relief. *See* Fed. R. Civ. Proc. 56(c)(1)(B), (e); *see also Dreamdealers USA, LLC v. Lee Poh Sun*, No. 13-cv-1605-JCM-VCF, 2014 WL 3919856, at *4 (D. Nev. Aug. 12, 2014) ("The primary difference between a 12(b)(6) motion to dismiss and a motion for summary judgment is that the former is theoretical and the latter is factual."). The denial of a motion to dismiss, therefore, does not preclude a later motion for summary judgment.

[3]    The Court discusses the allegations in the Second Amended Complaint to provide context for this Motion. Because Plaintiff did not sign it under penalty of perjury, the Court does not consider its allegations as evidence for purposes of this Report and Recommendation. *See Moran v. Selig*, 447 F.3d 748, 759 n.16 (9th Cir. 2006) (Unverified complaints "cannot be considered as evidence at the summary judgment stage."); *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (Pro se inmates are exempted from "strict compliance with summary judgment rules," but not "all compliance"; holding "statements supporting [plaintiff's] tolling argument . . . in his unsworn district court responses to the defendants' motion for summary judgment" were not "competent evidence"); *Harris v. Shelland*, No. 15-cv-2442-MMA (JLB), 2017 WL 2505287, at *4 (S.D. Cal. June 9, 2017) (rejecting a pro se plaintiff's unverified complaint as evidence in ruling on a motion for summary judgment).

On September 5, 2017, Zendejas issued Plaintiff an RVR for disobeying a "get down" order. *Id.* at 4. That same day, Plaintiff reported to Paramo and other RJD officials that this RVR constituted harassment. Dkt. No. 60 at 75, 84. On September 23, 2017, Lieutenant J. Luna held a Disciplinary Hearing on the RVR. *Id.* at 97. On October 10, 2017, Luna found Plaintiff "[g]uilty but Reduced to Counseling Chrono based on a preponderance of the evidence." *Id.* at 103. On October 11, 2017, Plaintiff wrote to Paramo disputing the Disciplinary Hearing Results. *Id.* at 76.

Because of Plaintiff's report of harassment, reduction of the RVR to a "counseling chrono," and the letter to Paramo, Zendejas retaliated against Plaintiff on November 9, 2017, by "coerc[ing]" Correctional Officer Ochoa to "trash Plaintiff's cell" to "incite [Plaintiff] to anger"; Zendejas then "pointed a rifle at [Plaintiff] and was going to shot [sic] him." *Id.* at 4, 79, 84.

On November 11, 2017, Plaintiff wrote to Paramo requesting an investigation of the November 9, 2017 incident. Dkt. No. 60 at 77–78. On November 18, 2017, Plaintiff sent a letter to the "Office of Internal Affairs" describing Zendejas's conduct. *Id.* at 12, 79. Plaintiff's letter alleged Zendejas's superiors, including Paramo, were "purposefully placing [Zendejas] in [Plaintiff's] building . . . to 'SET [PLAINTIFF] UP.'" *Id.* at 79 (emphasis in original).

On December 3, 2017, Plaintiff filed an inmate grievance regarding the November 9, 2017 incident. *Id.* at 125.

On December 23, 2017, Plaintiff joined an inmate "group appeal" alleging Zendejas "is unfit for this duty and causing a hostile environment" and requesting her removal "from the position of tower control." *Id.* at 121. On January 9, 2018, Plaintiff requested a superior address Zendejas's "continued harassment and child[']s play" toward "signers of the [group appeal]." *Id.* at 80 (emphasis and parenthesis omitted).

Zendejas retaliated "against [Plaintiff] and all other inmates who file[d] complaints against her, particularly those inmates who signed [the inmate group appeal]." *Id.* at 8. Specifically, on January 15, 2018, Zendejas retaliated against Plaintiff by issuing him a

"fabricated" RVR for ignoring an order given on January 12, 2018. *Id.* at 7. Plaintiff had "absolutely no idea of the 'alleged' encounter" that led to the order. *Id.*

Beginning in February 2018, in response to Plaintiff's 2012 civil rights complaint and Plaintiff's November 18, 2017 letter to the Office of Internal Affairs, unspecified prison officials retaliated against Plaintiff by intercepting his legal mail, prevented him from e-filing a complaint with this Court, and "placed the entire delta yard on 'lockdown.'" *Id.* at 11, 12.

## IV.  DEFENDANTS' EVIDENCE IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants attach the following evidence in support of their Motion for Summary Judgment: (1) a California Department of Corrections and Rehabilitation ("CDCR") Memorandum containing the September 23, 2017 Disciplinary Hearing Results; (2) two Memoranda titled "Determination of Staff Complaint," one (dated December 4, 2017) referred to "AW COVEL" and the other (dated December 28, 2017) to be "process[ed] as a routine appeal" because it "d[id] not meet criteria for assignment as a staff complaint"; (3) excerpts from Plaintiff's August 25, 2020 deposition; (4) Paramo's Declaration; and (5) Zendejas's Declaration. Dkt. Nos. 181-1 at 12, 81–88, 94–103, 105–111; 181-4; 181-5. Paramo's and Zendejas's Declarations are summarized below.

### A. Paramo's Declaration

Paramo was RJD's warden from 2011 through 2018. Dkt. No. 181-4 at 1. He had no knowledge of Plaintiff's: (1) appeals of the September 5, 2017 RVR; (2) subsequent hearing on that RVR; or (3) initial grievance regarding a non-party correctional officer's purportedly fabricated RVR. *Id.* at 3, 5. Instead, Chief Deputy Warden Covello handled these matters and signed RJD's responses on Paramo's behalf. *Id.* at 3–4, 5.

Paramo knew Plaintiff filed a grievance claiming Zendejas pointed a rifle at him on November 9, 2017 after another officer ransacked his cell. Dkt. No. 181-4 at 5–6. Paramo assigned this grievance to Chief Deputy Warden Covello to conduct an "Inquiry." *Id.* at 6. Thereafter, Paramo "had no further personal involvement in [this grievance]." *Id.* Paramo

believes Covello questioned correctional officers, including Zendejas, during the investigation and found no misconduct. *Id.* at 6.

Paramo knew Plaintiff joined the inmate group appeal alleging Zendejas engaged in misconduct. *Id.* at 7.

Paramo did not receive any information that any correctional officer acted improperly towards Plaintiff at any time. *Id.* at 4, 7, 8.

Paramo neither "interfered with [Plaintiff's] ability to electronically file a civil complaint," nor "intercepted [Plaintiff's] legal mail." *Id.* at 3. He also "never placed [RJD] on lockdown because [Plaintiff] contacted the Office of Internal Affairs regarding any civil litigation that he may have filed." *Id.* at 2.

More generally, Paramo "never retaliated against [Plaintiff] at any time for any reason." *Id.* at 8.

### B. Zendejas's Declaration

Zendejas "had no knowledge that [Plaintiff] sent any letters to the Warden, or to anyone else, complaining about [her]." Dkt. No. 181-5 at 2.

Zendejas "had no involvement in the decision for Officer Ochoa to search or enter [Plaintiff's] cell" on November 9, 2017. *Id.* She denies having "pointed a Ruger Mini 14 semiautomatic rifle at [Plaintiff]" at any time. *Id.*

Regarding Plaintiff's allegations that Zendejas issued a fabricated RVR on January 15, 2018, Zendejas declares she was "working outside the dining hall that morning monitoring the inmates as they entered." *Id.* Per standard procedure, Zendejas ordered the inmates, including Plaintiff, to show their identification cards as they entered the dining hall. *Id.* Plaintiff "ignored [her] order." *Id.* She "counseled [Plaintiff] about not following orders." *Id.* Plaintiff "was wearing his hearing aid[] at that time." *Id.* Because "[Plaintiff] was not receptive to [her] counseling . . . [Zendejas] determined that [she] should issue a Rules Violation Report to [Plaintiff]." *Id.* She "did not write [the RVR] on [Plaintiff] in retaliation" but instead, to maintain "order and discipline." *Id.* at 3.

Zendejas "never retaliated against [Plaintiff]"; she "never took any adverse action against him"; she "never threatened him"; and she "never caused any other correctional officer to take any adverse action against [Plaintiff] . . . because of any constitutional protected activity he engaged in." *Id.* at 3.

## V. LEGAL STANDARDS

A party may move for summary judgment as to a claim or defense. Fed. R. Civ. Proc. 56(a). Summary judgment is appropriate where the Court is satisfied there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet this burden by identifying the "portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that show an absence of dispute regarding a material fact. *Id.* (internal quotations omitted).

Once the moving party satisfies this initial burden, the nonmoving party must "designate specific facts showing that there is a genuine dispute for trial." *Id.* at 324 (internal quotation marks omitted). This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the nonmoving party. *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (quoting

*Celotex*, 477 U.S. at 324). The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleading[s]." *Anderson*, 477 U.S. at 256.

Courts should "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)).

## VI.    DISCUSSION

Defendants seek summary judgment on all remaining claims in Plaintiff's Second Amended Complaint (i.e., First Amendment retaliation claims against Paramo and Zendejas). Dkt. No. 181 at 6.

A First Amendment retaliation claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Regarding the first (adverse action) element, the "mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (emphasis in original).

To satisfy the second (because of) prong, a plaintiff must establish the "protected conduct was the 'substantial' or 'motivating' factor for the defendant's conduct." *Id.* at 1271 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.1989)).

The third (protected conduct) element considers whether a plaintiff engaged in conduct protected by the First Amendment. *Id.* at 1269.

The fourth (chilled) element requires a plaintiff show the adverse action "would chill *or* silence a person of ordinary firmness from future First Amendment activities." *Id.* at 1271 (quoting *Rhodes*, 408 F.3d at 568–69) (emphasis in original). A plaintiff who was not

actually chilled can still bring a First Amendment retaliation claim because "[t]o hold otherwise 'would be unjust' as it would 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.'" *Id.* (quoting *Rhodes*, 408 F.3d at 569).

To satisfy the fifth (no legitimate correctional goal) element, "a prisoner must show that the challenged action 'did not reasonably advance a legitimate correctional goal.'" *Id.* (quoting *Rhodes*, 408 F.3d at 568). In making this determination, the Court considers whether the regulation and the asserted goal is "arbitrary or irrational." *Shaw v. Murphy*, 523 U.S. 223, 228 (2001).

The Court next applies this law to Defendants' Motion for Summary Judgment on Plaintiff's claims against Paramo and Zendejas.

## A. Paramo

Plaintiff alleges: (1) unspecified prison officials intercepted his legal mail, interfered with his e-filing, and placed the prison on lockdown (Dkt. No. 60 at 11); and (2) Paramo "ignored or inadequately investigated" Plaintiff's complaints about Paramo's "subordinates (particularly c/o Zendejas)" and, as a result, Zendejas continued to retaliate against Plaintiff (*id.* at 8) (internal quotes and emphasis omitted).

"A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Government officials may not be held liable under 42 U.S.C. § 1983 for unconstitutional conduct of their subordinates based on the theory of respondeat superior. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government official-defendant, through the official's own individual actions, has violated the Constitution.").

//

//

//

> i. *Legal Mail Interception, E-filing Interference, and Prison Lockdown Claims*

As a threshold matter, Plaintiff has not adequately pled the legal mail interception, e-filing interference, or prison lockdown claims against Paramo or any other Defendant. Plaintiff fails to identify the Defendants who allegedly committed these actions. These claims, therefore, are not viable. *See McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (A complaint must make clear "who is being sued, for what relief, and on what theory, with enough detail to guide discovery."); *see also Dunsmore v. California*, No. 11-cv-7141-DOC-JCG, 2012 WL 3809413, at *3 (C.D. Cal. July 26, 2012) ("Plaintiff's general references to unspecified 'defendants' as the perpetrators of the violations also fail" because "such allegations do not 'allow[ ] the court to draw the reasonable inference that' any of the named individuals 'is liable for the misconduct alleged.'") (quoting *Iqbal*, 556 U.S. at 678), *report and recommendation adopted*, 2012 WL 3810255 (Sept. 4, 2012); *Egbert v. Sw. Collection Servs., Inc.*, No. 12-cv-00421-DOC, 2013 WL 3188850, at *3 (C.D. Cal. June 21, 2013) (dismissing a plaintiff's claim that "Defendant initiated a soft pull of Plaintiff's credit report" when "Plaintiff here fails to even identify which of the six defendants allegedly initiated the soft pull of Plaintiff's credit report or why the other five defendants are relevant.").

Even assuming these claims pertain to Paramo, summary judgment is appropriate. Paramo categorically denies retaliating against Plaintiff for any reason, and specifically denies intercepting Plaintiff's mail or "interfer[ing] with [Plaintiff's] ability to electronically file a civil complaint." Dkt. No. 181-4 at 3, 8. Paramo also declares he "never placed [RJD] on lockdown because [Plaintiff] contacted the Office of Internal Affairs regarding any civil litigation that [Plaintiff] may have filed." *Id.* at 2.

Paramo's sworn declaration makes a prima facie showing of entitlement to summary judgment and shifts the burden to Plaintiff. *See Wiley v. Oregon*, No. 17-cv-00667-JO, 2019 WL 4261112, at *2 (D. Or. Sept. 9, 2019) ("[Defendant's] declaration eliminates any issue of material fact as to [him] and shifts the burden to [Plaintiff] to 'go beyond the

pleading and by [his] own affidavits . . . designate specific facts showing that there is a genuine issue for trial.'") (quoting *Celotex Corp.*, 477 U.S. at 322–24)). Plaintiff's Oppositions provide no evidence to counter Paramo's declaration or raise a genuine issue of material fact.

The Court, therefore, recommends GRANTING Paramo summary judgment on Plaintiff's legal mail interception, e-filing interference, and prison lockdown claims. *See DeNieva v. Reyes*, 966 F.2d 480, 486 (9th Cir. 1992) (A party cannot establish a disputed question of material fact, and thereby avoid summary judgment, by making a "bare assertion" that is devoid of "any legal or factual support."); *see also Entler v. Gregoire*, No. 12-cv-5141-TOR, 2019 WL 3022190, at *3 (E.D. Wash. July 10, 2019) ("Without any evidence of direct involvement, knowledge or participation, Governor Gregoire cannot be held liable for the actions of the Department of Corrections employees.").

*ii.  Failure to Investigate and Prevent Constitutional Violations Claim*

Paramo declares he lacked knowledge of the handling of certain appeals and had minimal to no role in the handling of the others. Dkt. No. 181-4 at 6–7. Paramo also declares he had no knowledge his staff violated Plaintiff's constitutional rights or engaged in any misconduct toward Plaintiff. *Id.* at 1, 4, 7–8. Further, Paramo submits memoranda prepared by the "Appeals Coordinator" referring the inmate group appeal to Covello for "process[ing] as a routine appeal." Dkt. No. 181-1 at 81, 93–94.

In support of his Opposition, Plaintiff submits letters (three from Plaintiff and three in response) to show Paramo knew about Zendejas's and other correctional officers' "unconstitutional conduct." Dkt. Nos. 202 at 3–9; 204 at 3. The response letters merely acknowledge Plaintiff's complaints and direct Plaintiff to utilize the "Inmate/Parolee Appeal" process. *Id.* at 7–9. They do not demonstrate Paramo knew about any unconstitutional conduct. *Id.*

Paramo also submits evidence establishing he assigned RJD officials to investigate the allegations and they found no impropriety. *See* Dkt. No. 181-4 at 3–4 (describing the inquiry conducted in response to Plaintiff's October 2017 appeal of the September 23, 2017

Disciplinary Hearing results: "Chief Deputy Warden Covello reviewed it on [Paramo's] behalf"; Covello "assigned the matter to Correctional Lieutenant Ortiz"; "Ortiz investigated [Plaintiff's] allegations and interviewed [Plaintiff]"; "Ortiz considered all of [Plaintiff's] allegations and did not find [Zendejas] or any other staff member acted improperly."); *id. at* 5 (describing the inquiry conducted in response to an inmate appeal Plaintiff filed November 2017 regarding a non-party correctional officer's issuance of an RVR: "Chief Deputy Warden Covello reviewed this appeal on [Paramo's behalf]"; "Covello assigned the matter to Correctional Sergeant R. Marientes"; "Sergeant Marientes found that 'the allegation of false reporting and fabricating of the counseling chrono is unfounded and without merit'"); *id. at* 6–7 (describing the inquiry conducted in response to the November 9, 2017 events: "Correctional Lieutenant J. Luna interviewed [Plaintiff] . . . Custody staff were interviewed . . . Correctional officers S. Ochoa, R. Guiterrez, and E. Zendejas were questioned. . . . Inmates R. Rendon, AL5169 and A. Vivaldi, C69700 were questioned"; CDCR forms were reviewed; Chief Deputy Warden Covello reviewed the appeal inquiry; and Covello and Lieutenant Luna found no staff violation of CDCR policy). Paramo's response letters also support his claim that Plaintiff's complaints were investigated. For example, the December 20, 2017 letter states, "I have contacted the Inmate Appeals Office (IAO) at [RJD] in regards to your concerns. The IAO has informed me that you have filed an appeal . . . as a Staff Complaint. You will be interviewed by a supervisor regarding your staff complaint." Dkt. No. 202 at 7.

In sum, the undisputed evidence before the Court establishes Paramo had no knowledge that any of his subordinates were violating Plaintiff's constitutional rights. The Court, therefore, recommends GRANTING Paramo summary judgment on Plaintiff's claims. *See Manning v. King Cty. DAJD*, No. 18-cv-1568-JCC-MAT, 2019 WL 7593238, at *8 (W.D. Wash. Dec. 5, 2019) (finding supervisor defendant entitled to summary judgment where he "present[ed] evidence that he promptly reviewed and referred each of plaintiff's complaints to jail staff. [Supervisor defendant] also was never assigned to personally investigate any of plaintiff's complaints and was not responsible for determining

staff assignments in the jail."), *report and recommendation adopted*, 2020 WL 247163 (Jan. 16, 2020).

### B. Zendejas

Three First Amendment retaliation claims against Zendejas survived Defendants' Motions to Dismiss: (1) coercing another correctional officer to ransack Plaintiff's cell; (2) pointing a rifle at Plaintiff; and (3) fabricating the January 15, 2018 RVR. Dkt. No. 60 at 4, 7. The Court evaluates each in turn.

#### i. Cell Search

Plaintiff claims Zendejas retaliated against him by coercing Correctional Officer Ochoa to ransack Plaintiff's cell and incite Plaintiff to anger. Dkt. No. 60 at 4. The Court previously dismissed these allegations as inadequately pled. Dkt. No. 30 at 14 ("Plaintiff makes only conclusory allegations unsupported by specific facts that Defendant Zendejas coerced Ochoa into trashing Plaintiff's cell. Plaintiff merely states that Defendant Zendejas and Ochoa were both working on November 9, 2017. . . . Plaintiff also states that Ochoa was 'uncharacteristically aggressive and angry toward [him].' . . . These statements fail to show or infer an agreement between Defendant Zendejas and Ochoa to retaliate against Plaintiff for his complaints.") (internal citations omitted). Plaintiff's Second Amended Complaint pleads no additional facts. *Compare* Dkt. No. 3 at 3 (Initial Complaint making conclusory coercion allegation that "c/o Zendejas coerced floor c/o Ochoa to trash plaintiff's cell to incite him to anger.") (edits omitted), *with* Dkt. No. 60 at 4 (Second Amended Complaint with identical allegation and nothing more).

Zendejas also declares she "had no involvement in the decision for Officer Ochoa to search or enter [Plaintiff's] cell." Dkt. No. 181-5 at 2. Plaintiff has not submitted any evidence to the contrary. The Court, therefore, recommends GRANTING Zendejas's Motion for Summary Judgment on Plaintiff's cell search claim. *See Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) ("[Plaintiff's] claims against all the defendants for a conspiracy to violate his constitutional rights under section 1983 also fail because they were supported only by conclusory allegations."); *Garcia v. Sleeley*, No. 14-cv-01525-JLS

(RBM), 2019 WL 2234789, at *17 (S.D. Cal. May 22, 2019) ("[T]he record before the Court does not show that [defendants] acted in concert" despite the plaintiff's allegations that "two doctors [were] both providing medical treatment in different capacities."), *report and recommendation adopted*, 2019 WL 3887340 (Aug. 19, 2019).

### ii. Pointing a Rifle at Plaintiff

Liberally construed, Plaintiff's Second Amended Complaint alleges Zendejas pointed a rifle at him on November 9, 2017, in retaliation for letters Plaintiff wrote to Zendejas's superiors complaining about her "sadistic, abusive, and harassment behavior" and because an earlier RVR Zendejas issued was reduced to a counseling chrono. Dkt. No. 60 at 4, 6, 77.[4]

The First Amendment protects both Plaintiff's complaints about Zendejas and his challenge to the RVR. *See Jones v. Williams*, 791 F.3d 1023, 1035–36 (9th Cir. 2015) ("The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities. . . . [Plaintiff's] complaints of discrimination to his supervisors . . . were conduct protected by the First Amendment."); *see also Muhammed v. Byron Ponds*, No. 20-cv-00602, 2020 WL 7231625, at *4 (M.D. Tenn. Dec. 8, 2020) ("[A] prisoner maintaining his innocence at a disciplinary hearing is protected conduct."); *Anderson v. Jolly*, No. 15-cv-05286-BHS-JRC, 2016 WL 109966, at *2 (W.D. Wash. Jan. 11, 2016) (describing "testifying in his own defense during the disciplinary hearing" as "exercising constitutionally protected rights. . . .").

---

[4] Although the record is sparse as to the specifics of Plaintiff's defense to the RVR, the Disciplinary Hearing Results attached to Plaintiff's Complaint and Zendejas's Motion show Plaintiff made a statement in his defense and Lieutenant Luna considered this statement in reducing the RVR to a counseling chrono. Dkt. Nos. 60 at 101; 181-1 at 16. And, while Zendejas denies having knowledge of Plaintiff's complaints and letters about her, she does not deny having knowledge of the RVR's reduction to a counseling chrono. Dkt. No. 181-5 at 2.

Plaintiff's allegation that Zendejas pointed a rifle at him establishes a "threat of harm" and, therefore, sufficiently alleges an "adverse action." *Brodheim*, 584 F.3d at 1270; *see also Carter v. Davey*, No. 16-cv-00365-GSA-PC, 2017 U.S. Dist. LEXIS 138128, at *7 (E.D. Cal. Aug. 26, 2017) ("Plaintiff has satisfied the first element of a retaliation claim, because threatening to kill someone while pointing a gun at him is unquestionably an adverse action."); *Parker v. Asher*, 701 F. Supp. 192, 195 (D. Nev. 1988) ("We hold only that guards cannot aim their taser guns at inmates for the malicious purpose of inflicting gratuitous fear."); *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986) (guard pointing a gun at inmate, cocking it, and threatening him with "instant death" immediately after inmate had testified against another guard was sufficiently adverse).

Zendejas's declaration that she "never pointed a Ruger Mini 14 semiautomatic rifle at [Plaintiff] while [she] was performing [her] duties as a control booth operator, or at any other time" is insufficient to obtain summary judgment. Dkt. No. 181-5 at 2. Because Zendejas is the moving party, it is her burden to come forward with evidence in the first instance. *See Celotex*, 477 U.S. at 323. Zendejas's declaration that she "never pointed a Ruger 14 semiautomatic rifle" at Plaintiff is too specific to rebut Plaintiff's more general allegation that she pointed a "rifle" at him (Dkt. No. 60 at 4) because it leaves open the possibility Zendejas pointed some other type of rifle at Plaintiff. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1107 (9th Cir. 2000) (concluding plaintiffs "had no obligation to provide evidence in response" where plaintiffs' allegations and moving party's affidavit could both be true: plaintiffs alleged they timely "dispatched" notice and moving party presented an affidavit declaring it did not "receive" notice); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985) ("[A] party opposing summary judgment need not file any countervailing affidavits or other materials where the movant's papers are insufficient on their face to demonstrate the lack of any material issue of fact.").

Additionally, Plaintiff attached a sworn affidavit dated January 13, 2018 to his Second Amended Complaint stating, "I feel, in retaliation for my continued complaints against [Zendejas] . . . she pointed a gun (rifle) at me . . . ." Dkt. No. 60 at 84. Plaintiff's

allegations and sworn affidavit sufficiently place the issue of whether Zendejas pointed a rifle (either a Ruger 14 or some other rifle) at Plaintiff in dispute. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) ("[W]e must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contention of the motions or pleading are true and correct.").[5]

Because she has not admitted to pointing a rifle at Plaintiff, Zendejas has offered no evidence or explanation on either the "because of" or "legitimate correctional goal" elements of Plaintiff's First Amendment retaliation claim. *Rhodes*, 408 F.3d at 567–68. Zendejas's general and conclusory statements that she "never retaliated against [Plaintiff] . . . [she] never took any adverse action against him, [and she] never threatened him" (Dkt. No. 181-5 at 3), are insufficient to establish the absence of a material fact regarding Plaintiff's specific allegation that Zendejas pointed a rifle at him in retaliation for his protected conduct. *See also Lopez v. MauiSun Comput. Sys. Inc.*, No. 12-cv-00414-TUC-BPV, 2016 U.S. Dist. LEXIS 130865, at *28–29 (D. Ariz. Sep. 22, 2016) (denying summary judgment where defendant's "general assertion in his . . . declaration that he treated [plaintiff] 'with nothing but respect during . . .' her employment" did not address plaintiff's specific sexual harassment allegations); *Moore v. Sloss*, No. 04-cv-0871-MCE-EFB-P, 2008 WL 669884, at *8 (E.D. Cal. Mar. 7, 2008) (denying summary judgment where "[n]otwithstanding specific and detailed accusations against her, [defendant's] declaration offer[ed] only the general and non-specific conclusions that she 'never destroyed or mishandled an inmates mail' and 'did not retaliate against [plaintiff] in any

---

[5] Zendejas cites Plaintiff's deposition testimony where he testified, "especially when the other inmates told [Plaintiff] that [Zendejas] was pointing a gun down on [Plaintiff]" (Dkt. No. 181-1 at 109) to support a conclusion that this allegation is based on hearsay (Dkt. No. 181 at 21). Plaintiff's January 13, 2018 affidavit, however, is not clearly sourced in this same hearsay. Dkt. No. 60 at 84.

way.'"). Because triable issues of material facts remain as to (1) whether Zendejas pointed a gun at Plaintiff; (2) because Plaintiff wrote letters complaining about Zendejas and because her RVR was reduced to chrono; and (3) for no penological purpose, the Court recommends DENYING summary judgment on this First Amendment retaliation claim.

### iii.    January 15, 2018 RVR

Finally, the Court addresses Plaintiff's claim that Zendejas issued a "phoney" RVR on January 15, 2018 in retaliation for joining the December 23, 2017 inmate group appeal seeking her removal. Dkt. No. 60 at 7, 121.

Zendejas's sworn declaration explains the circumstances leading to this RVR. Specifically, Zendejas declares: (1) standard procedure requires inmates, including Plaintiff, to show their identification cards upon entering the dining hall; (2) Plaintiff ignored her order and her attempt to counsel Plaintiff; and (3) she issued an RVR to "maintain an appropriate level of order and discipline." Dkt. No. 181-5 at 2–3.

Plaintiff's Oppositions present no evidence rebutting Zendejas's declaration. The sworn declarations attached to Plaintiff's Second Amended Complaint from two inmates, Peter Garcia (describing Zendejas's increased hostility towards him since joining the inmate group appeal) and Victor Mendez (describing Zendejas's "inappropriate cursory search[es]" on inmates), also do not place the issue in dispute. Dkt. No. 60 at 86–90. Neither Garcia nor Mendez claim to have any knowledge about the incident that led to the January 15, 2018 RVR. *Id.* Their declarations, therefore, are insufficient to create a dispute over the facts supporting the RVR set out in Zendejas's declaration.

The Court next considers whether the RVR served a legitimate penological objective. Zendejas explains she issued the RVR "to maintain an appropriate level of order and discipline." Dkt. No. 181-5 at 3. Plaintiff has presented no evidence to the contrary. The Court, therefore, finds no dispute over whether Zendejas issued the RVR for a legitimate penological purpose. *See Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) ("[M]aintaining prison discipline" served a legitimate penological purpose.); *Greene v. Neven*, 2009 WL 1911913, *5 (D. Nev. July 1, 2009) ("Punishing inmates for violating

rules and acting violently toward prison officials advances legitimate correctional goals of safety, security, and order."); *cf. Exmundo v. Kane*, No. 08-cv-00822-DLB-PC, 2012 WL 2339111, at *9 (E.D. Cal. June 19, 2012) ("If the RVR is false, it clearly would not serve a legitimate penological goal."), *aff'd*, 553 F. App'x 742 (9th Cir. 2014).

Because Zendejas has presented undisputed evidence establishing Plaintiff cannot prevail on his RVR retaliation claim, the Court recommends GRANTING summary judgment on this claim. *See Marti v. Padilla*, No. 7-cv-00066-LJO-GSA-PC, 2015 WL 5687598, at *10 (E.D. Cal. Sep. 25, 2015) ("Defendant Knight has come forward with evidence that the RVR was issued based on his belief that Plaintiff was violating prison regulations. . . . Plaintiff has not come forward with evidence that establishes that the RVR was issued in retaliation for filing an inmate grievance. Judgment should therefore be entered in favor of Defendant[].").

### C. Qualified Immunity

Defendants also argue they are entitled to qualified immunity because "[r]easonable correctional officials in Defendants' positions would believe that their actions were reasonable and would not have violated [Plaintiff's] constitutional rights." Dkt. No. 181 at 22.

To determine whether a government official is entitled to qualified immunity, courts must consider whether: (1) the official's conduct violated a constitutional right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

"An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (alteration and omission in original) (citation omitted).

The Court finds Paramo is entitled to qualified immunity for the same reasons discussed above: the undisputed facts establish he did not violate a clearly established

constitutional right. *See Allen v. City of Santa Monica*, No. 11-cv-10139-R (SH), 2013 WL 6731789, at *11 (C.D. Cal. Dec. 18, 2013) ("As discussed above, based on the undisputed facts, Plaintiff has not established a constitutional violation based on his traffic stop claim, as a matter of law. Therefore, Defendants are entitled to qualified immunity on that claim."). For the same reasons, the Court finds Zendejas is entitled to qualified immunity on Plaintiff's cell search and RVR retaliation claims.

The Court's finding of a material issue of disputed fact over whether Zendejas pointed a rifle at Plaintiff for no legitimate correctional purpose, however, also defeats qualified immunity on this claim. "[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003) (quoting *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)); *Allen v. Scribner*, 812 F.2d 426, 435 (9th Cir. 1987) ("If . . . it appeared . . . defendants acted against [plaintiff] because of his speech, then the defendants are not entitled to immunity. . . . A jury must decide the issue of motivation."). Clearly established law also holds that a law enforcement officer violates the Constitution by pointing a gun at an individual without justification. *See Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) ("A police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause physical injury, but he has certainly laid the building blocks for a section 1983 claim against him."); *Mitchell v. Lopez*, No. 8-cv-0382-ECR (RAM), 2011 U.S. Dist. LEXIS 16524, at *46 (D. Nev. Jan. 19, 2011) ("A reasonable officer therefore would have been on notice that shoving a shot gun into the chest of an inmate and unnecessarily shoving an inmate into a window may constitute excessive force.").

In sum, the Court recommends GRANTING Paramo qualified immunity on all claims against him, GRANTING Zendejas qualified immunity on Plaintiff's cell search and RVR claims, and DENYING Zendejas qualified immunity on Plaintiff's claim that Zendejas pointed a rifle at him.

## VII. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) GRANTING Defendant Paramo's Motion for Summary Judgment in its entirety; (3) GRANTING Defendant Zendejas's Motion for Summary Judgment on Plaintiff's November 9, 2017 cell search and January 15, 2018 RVR claims; and (4) DENYING Defendant Zendejas's Motion for Summary Judgment on Plaintiff's claim that Zendejas pointed a gun at him on November 9, 2017.

**IT IS ORDERED** that on or before **July 9, 2021**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties by **July 23, 2021**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  June 18, 2021

Honorable Daniel E. Butcher
United States Magistrate Judge

18-cv-00361-JLS (DEB)