UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYCHAL ANDRA REED,<br><br>                              Plaintiff,<br><br>v.<br><br>D. PARAMO, et al.,<br><br>                              Defendants. | Case No.:  18-CV-361 JLS (DEB)<br><br>**ORDER (1) SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION; (2) ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION; AND (4) VACATING JULY 12, 2021 ORDER**<br><br>(ECF Nos. 181 & 234–36) |

Presently before the Court is Defendants D. Paramo ("Paramo") and E. Zendejas's ("Zendejas") (collectively, "Defendants") Motion for Summary Judgment ("Mot.," ECF No. 181), as well as Plaintiff Mychal Andra Reed's ("Plaintiff") Opposition thereto ("Opp'n," ECF No. 190), Plaintiff's "Additional Opposition Response[s]" (ECF Nos. 202, 204), and Defendants' Reply in support of the Motion ("Reply," ECF No. 209).  Magistrate

Judge Daniel E. Butcher has issued a Report and Recommendation advising the Court to grant Paramo's Motion in its entirety and to grant in part and deny in part Zendejas's Motion ("R&R," ECF No. 234), and Plaintiff has filed Objections thereto ("Objs.," ECF No. 236).  Having carefully considered Judge Butcher's R&R, the Parties' arguments, and the law, the Court **SUSTAINS IN PART AND OVERRULES IN PART** Plaintiff's Objections, **ADOPTS IN PART AND REJECTS IN PART** the R&R, **GRANTS IN PART AND DENIES IN PART** Defendants' Motion, and **VACATES** its July 12, 2021 Order (ECF No. 235).

## BACKGROUND

Judge Butcher's R&R contains a thorough recitation of the relevant background and evidence.  *See* R&R at 2–7.  Nonetheless, given that the Court sustains Plaintiff's objection concerning what the R&R classifies as evidence, *see infra* at 18–20, the Court sets forth anew the evidence it considers relevant to Defendants' Motion and Plaintiff's Objections to the R&R.

## I.   General Allegations

Plaintiff is a deaf/hearing-impaired inmate housed at R.J. Donovan Correctional Facility ("RJDCF" or "Donovan").  *See* SAC at 1, 4, 94; Mot. at 1.  Plaintiff filed a civil rights action against a California Department of Corrections and Rehabilitation ("CDCR") official at another prison in 2012;[1] Plaintiff claims that Paramo, the warden of RJDCF from 2011 until the end of 2018, was aware of that lawsuit because Paramo mentioned it in correspondence with Plaintiff.  SAC at 12; Objs. at 4; Declaration of D. Paramo in Support of Motion ("Paramo Decl.," ECF No. 181-4) ¶ 1.

As warden of RJDCF at the time relevant to Plaintiff's claims, Paramo was the person at RJDCF with the authority to institute a lockdown of the prison.  *See* SAC at 12; Paramo Decl. ¶¶ 3–4.  Paramo declares that he never placed RJDCF on lockdown because

---

[1] The Court **SUSTAINS** Plaintiff's objection to the R&R's mistaken statement that this lawsuit was against Paramo.

Plaintiff contacted the Office of Internal Affairs regarding any litigation.   Paramo Decl. ¶ 3.   He notes that instituting a lockdown "is a serious matter" and a "rare occasion[]" given that, "[t]o arbitrarily institute a lock down . . . would inflame inmate stress and tension, and undoubtedly lead to violent incidents, which would jeopardize inmate and staff safety." *Id.* Thus, "[he] never did such a thing, and [he] never would." *Id.*   Further, any lockdown has to be documented and reported.   *Id.* ¶ 4.   Lockdowns "are scrutinized at the highest levels of CDCR's administration," so "it is virtually impossible to implement a lockdown" simply to retaliate against a single inmate.   *Id.*

Paramo states that he never ignored any complaint or allegation of staff impropriety made by Plaintiff "that [he] was aware of." *Id.* ¶ 2.   He claims he did not fail to have any such allegations he was aware of investigated or fail to supervise subordinates tasked with investigating the complaints.   *Id.*   He was never provided with any evidence following investigation to support Plaintiff's allegations.   *Id.*   Paramo further states that "[he] never failed to investigate or remediate any situation at Donovan that involved staff improprieties that [he] became aware of when [he] was Warden at Donovan." *Id.*   Had he ever been informed of improper staff behavior toward Plaintiff, "[he] would have taken immediate action to have such behavior addressed and corrected." *Id.* ¶ 18.   Paramo further declares that he "never interfered with Mr. Reed's ability to electronically file a civil complaint, and [he] never intercepted Mr. Reed's legal mail." *Id.* ¶ 5.

Zendejas is a correctional officer who worked at RJDCF at the relevant time. Declaration of E. Zendejas in Support of Motion ("Zendejas Decl.," ECF No. 181-5) ¶ 1. She was not aware during the relevant time that Plaintiff had sent any letters to Warden Paramo or anyone else complaining about her. *Id.* ¶ 2.

## II.   September 2017 Incident/Appeal RJD-D-17-05958

In early September 2017, Plaintiff was issued a Rules Violation Report ("RVR") by Zendejas for allegedly not wearing his "hearing impaired" vest on the softball field and failing to get down when ordered to do so by Zendejas after an alarm activated.   SAC at 96.   According to the RVR, Zendejas counseled Plaintiff about not getting down and not

wearing his vest, but he "was not receptive and stated 'I don't understand, I can't hear you.'" *Id.*

Plaintiff sent a letter dated September 5, 2017 "[t]o whom it may concern" at RJDCF, indicating that he carbon-copied, among others, "RJD Warden," titled "RE: CORRECTION OFFICER HARRASSMENT." *See* SAC at 74–75. The letter argues that "[Plaintiff] never at any time intentionally disregarded any order from c/o Zendejas." *Id.* at 74. The letter claims that Plaintiff "ha[s] personally witness[ed] previous sadistic, abusive and harassment behavior on inmates by c/o Zendejas, especially upon black inmates," and, "[b]ecause of the foregoing, [he] ha[s] made it a fervent point to avoid c/o Zendejas at all cost." *Id.* at 75.

A disciplinary hearing was held on September 23, 2017. *Id.* at 97. During the hearing, Plaintiff stated that "[his] hearing aid was in his sock because when it gets wet it shorts out," so he did not hear the alarm. *Id.* at 101. Plaintiff was found guilty but "Reduced to Counselling Chrono based on a preponderance of the evidence." *Id.*

A subsequent letter dated October 11, 2017, and addressed "Attn: WARDEN" indicates that Plaintiff had received the final RVR hearing report dated October 10, 2017, that found Plaintiff guilty of disobeying a direct order from Zendejas but reduced it to a counselling chrono. *Id.* at 76 (emphasis in original). Plaintiff claimed that he had been found guilty of disobeying an order never given to him and said that the final RVR document omitted Zendejas' "original statement which contradicts her own actions" in order "to appease her dishonest conduct." *Id.* A November 11, 2017 letter from Plaintiff to Paramo repeats many of the same allegations. *Id.* at 77–78. A letter to the Office of Internal Affairs from Plaintiff, dated November 18, 2017, requests that Zendejas be investigated "A.S.P." *Id.* at 79.

Plaintiff appealed the final RVR decision. *See* MSJ Ex. A at 41. His appeal was denied at the second level of review. *Id.* at 26. The letter notifying Plaintiff of the denial is from "Daniel Paramo, Warden, Richard J. Donovan Correctional Facility." *Id.* at 27. Paramo declares that he "had no knowledge of this inmate appeal because Chief Deputy

Warden Covello reviewed it on [his] behalf." Paramo Decl. ¶ 6. Paramo states that, "although [his] name and title appear on this Response, [his] signature is not above [his] name because Chief Deputy Warden Covello signed the response for [him]. Chief Deputy Warden Covello's doing so was not improper because the prison's regulations allow the Warden to delegate the responsibility of processing an appeal, and reviewing the Second Level Response, to his or her subordinates." *Id.* ¶ 8. Paramo further explains that he "was not made aware of this response, or [the investigating officer's] findings. Regardless, [Paramo] was not provided any information that there was any wrongdoing or false reporting regarding Mr. Reed's Rules Violation Report." *Id.*

## III.    November 2017 Incident/Appeal RJD-D-17-6991

On November 9, 2017, Plaintiff submitted an appeal for an incident that occurred the same day. MSJ Ex. C at 104. Plaintiff claimed that Correctional Officer Ochoa told Plaintiff to put on his hearing impaired vest to go see another CDCR official, Lewis, even though Plaintiff had his hearing aids in. *Id.* at 104, 106. Ochoa, at Zendejas's request, then "trashed" Plaintiff's cell. *Id.* at 106. Ochoa "yelled at [Plaintiff] as c/o Zendejas pointed her rifle at [him]." *Id.* Plaintiff claims he "was being set up" by Ochoa and Zendejas so Zendejas could shoot Plaintiff, and that Zendejas was "exacting her retaliation on [Plaintiff] for writing her superiors about her corrupt/prejudice behavior." *Id.* During his deposition, Plaintiff elaborated that "Ochoa had been [Plaintiff's] floor C/O for one year. [Plaintiff] had never had any negative encounter with [Ochoa]." MSJ Ex. E at 129. Plaintiff further stated: "[T]his is speculation, but with, in my opinion, evidence, especially when the other inmates told me that she was pointing a gun down on me -- Zendejas -- and giving me orders. She was getting ready to shoot me, but I walked away really quick from Ochoa." *Id.* at 130.

According to Zendejas's declaration, she "had no involvement in the decision for Officer Ochoa to search or enter Mr. Reed's cell," nor did she ask Ochoa to "trash" Plaintiff's cell or try to anger Plaintiff. Zendejas Decl. ¶ 3. She says she never pointed her

///

finger at Plaintiff and threatened him and "never pointed a Ruger Mini 14 semiautomatic rifle at Mr. Reed." *Id.*

A December 4, 2017 Memorandum from Appeals Coordinator Olivarria to Paramo for Appeal No. RJD-D-17-6991 indicated the appeal had been referred to "AW Covel" for an "'Appeal Inquiry' to be conducted by appropriate supervisory staff." MSJ Ex. C at 101. Paramo declares he became aware of this appeal on or about December 5, 2017, when he reviewed the Memorandum and referred the appeal to Covello. Paramo Decl. ¶ 14. A December 8, 2017 letter from the Inmate Appeals Office to Plaintiff informed him that his appeal of RJD-D-17-06991 had been sent for a second level response. SAC at 124. Paramo declares that he had no further involvement in this appeal. Paramo Decl. ¶ 15. Paramo was not provided with any evidence showing that Ochoa or Zendejas acted improperly with regard to Plaintiff on the date in question. *Id.* ¶ 16.

A December 20, 2017 letter to Plaintiff from "Daniel Paramo, Warden," indicates that "[it] is in response to [Plaintiff's] letters received by [Paramo's] office dated November 9, 2017, November 11, 2017, and November 14, 2017, . . . alleging staff misconduct" by Zendejas and Ochoa. ECF No. 202 at 7. The letter notes that "an inmate under the jurisdiction of the CDCR . . . may submit a CDC 602 Inmate/Parolee Appeal Form seeking relief from the adverse condition." *Id.* The letter also notes that "[Plaintiff's] submission of this correspondence to the Warden in addition to the Appeals Office, does not necessitate any additional investigation be made." *Id.* The letter further states: "I have contacted the Inmate Appeals Office (IAO) at RJDCF in regards to your concerns. The IAO has informed me that you have filed an appeal [RJD-D-17-06991] . . . . It is my advice that you allow supervisory staff to review the allegations and respond to [your appeal]," and that Plaintiff can further appeal if necessary. *Id.*

Plaintiff further submits the first page of two additional letters dated January 4, 2018, and February 14, 2018, allegedly from Paramo. *Id.* at 2, 8–9. They both claim to be in response to a November 3, 2017 letter from Plaintiff, and again inform Plaintiff of his right to submit a CDCR Form 602 to seek relief from adverse conditions. *Id.* at 8–9.

**IV.   December 2017 "Class Action" Against Zendejas/Appeal RJD-D-17-07453**

On December 26, 2017, inmate Barry McPherson submitted an "Inmate/Parolee Group Appeal" as the primary appellant, with other inmates, including Plaintiff, joining. MSJ Ex. D at 121.   The inmates claimed that "Zendejas is causing a hostel [sic] environment," by "creating [st]rife between the floor officers" and being "disrespectful to inmates, treating them like children." *Id.* at 117.   They said Zendejas was slow to release inmates for work or other programs, "[o]ften in retaliation against complaining inmates." *Id.* at 117, 119.   They also claimed that she shuts cell and sally port doors on "ADA inmates," refused to allow inmates to relieve themselves in their cell when the day room toilet was not working, and creates unnecessary delays. *Id.* at 119.

A December 28, 2017 Memorandum from Appeals Coordinator Adour to Paramo for Appeal No. RJD-D-17-07453 indicated the appeal was to be processed as a routine appeal. MSJ Ex. D. at 114.   A signature appears by Paramo's name and is dated December 28, 2017. *Id.*   Paramo declares he became aware of the appeal on or about that date, when he reviewed the Memorandum.   Paramo Decl. ¶ 17.   Per a December 29, 2017 letter addressed to Inmate McPherson, it was decided that RJD-D-17-07453 "did not meet the requirement for assignment as a staff complaint and was referred for routine appeal processing." SAC at 118.   The appeal was rejected at first-level review on December 29, 2017.   MSJ Ex. D at 117.   Paramo declares he was not provided with any information showing that Zendejas acted improperly as alleged in the appeal.   Paramo Decl. ¶ 17.   Had Paramo ever been informed of improper staff behavior toward Plaintiff, "[he] would have taken immediate action to have such behavior addressed and corrected." *Id.* ¶ 18.

On January 9, 2018, Plaintiff sent Lieutenant Luna a letter indicating that a female correctional officer told him that CCI Lewis wanted to talk to Plaintiff, so Plaintiff went to CCI Lewis's office. *Id.* at 80.   CCI Lewis told Plaintiff that Zendejas "wanted to know why I wasn't compling to with [sic] building rules and following her verbal orders," but Plaintiff said he "had no idea what c/o Zendejas was talking about because when she's in the tower [he] refuse[s] to come out of [his] cell." *Id.*   Plaintiff claimed this was "continued

7

HARRASSMENT . . . that her superiors are very aware of as told by the Class Action 502 grievance filed by several inmates against c/o Zendejas (RJD-D-17-07453) that you all have obviously ignored." *Id.* (emphasis in original).  Plaintiff does not appear to allege that either Paramo or Zendejas was aware of this letter.  A January 15, 2018 Declaration from Peter Garcia, who also signed the grievance against Zendejas, claims that Zendejas closes the door on him when he is leaving his cell, and that causes the door to hit him in most cases because he is mobility impaired and walks with a cane or walker. *Id.* at 86.  He claims these incidents escalated after signing the group appeal. *Id.*

## V.    January 2018 Incident

Zendejas's January 12, 2018 RVR states that she was standing outside the dining hall during breakfast and monitoring the inmates as they entered. *Id.* at 112.  She ordered them to show their identification cards, but Plaintiff, despite wearing his hearing aids, ignored her and continued to walk into the dining hall. *Id.*  She counseled Plaintiff about not following orders, but he "was not receptive and continued to behave as though not the hear [sic]." *Id.*

Plaintiff contends that he "DID NOT HAVE ANY ENCOUNTER WITH C/O ZENDEJAS ON 1/12/18 AS HER RVR FALSELY STATES."  SAC at 7 (emphasis in original).  Plaintiff further claims that Zendejas could not have "counselled" him, as she claims, because it was raining on January 12, 2018, and "plaintiff is [deaf/hearing impaired] and DOES NOT wear his hearing aid for his ONLY semi-operable ear (right) in the rain because it will SHORTOUT if it gets wet." *Id.* (emphasis in original).

Zendejas declares "she did not 'falsely' allege that Mr. Reed disobeyed an order of [hers] on January 12, 2018."  Zendejas Decl. ¶ 4.  She states that "[she] did not write this Rules Violation Report on Mr. Reed in retaliation"; rather, "[her] training, education, and experience led [her] to conclude that [she] needed to do so to maintain an appropriate level of order and discipline between [her] and Mr. Reed." *Id.* ¶ 5.

/ / /

/ / /

## VI.   Procedural History

Plaintiff initiated this civil rights action on February 9, 2018.   *See* ECF No. 1.
Plaintiff's First Amended Complaint ("FAC") against Defendants Paramo, Luna, Zendejas,
and Crespo was filed on February 26, 2018, alleging five claims for violation of Plaintiff's
First and Eighth Amendment rights.   *See generally* ECF No. 3.   Those Defendants moved
to dismiss Plaintiff's claims.   *See generally* ECF No. 15.   On January 31, 2019, the Court
granted in part and denied in part their motion.   *See generally* ECF No. 30.   Specifically,
the Court dismissed Plaintiff's Eighth Amendment claims against Paramo, Luna, Zendejas,
and Crespo; dismissed Plaintiff's First Amendment claims against Crespo and Luna; and
dismissed Plaintiff's First Amendment claims against Zendejas as they related to the
September 5, 2017 and November 9, 2017 incidents.   *See id.* at 21.   The Court granted
Plaintiff leave to file an amended complaint, explicitly warning him that "[a]ny claims not
re-alleged in the amended complaint will be considered waived."   *Id.* at 21–22.

Plaintiff filed the operative SAC on May 9, 2019, dropping Crespo and adding
Defendants Covello, Garcia, Marientes, and Scharr.   *See generally* ECF No. 60.   Plaintiff's
SAC alleges eight "counts" for violation of Plaintiff's First, Fifth, Eighth, and Fourteenth
Amendment constitutional rights.   *See id.* at 4–15.   The Defendants named in the SAC
again moved to dismiss.   *See generally* ECF Nos. 65, 78.   On October 15, 2019, the Court
again granted in part and denied in part the motion.   *See generally* ECF No. 85.
Specifically, the Court dismissed with prejudice Plaintiff's Eighth Amendment causes of
action against Defendants Paramo, Luna, Zendejas, and Crespo, and Plaintiff's First
Amendment cause of action against Zendejas to the extent predicated on the September
2017 RVR.   The Court also dismissed without prejudice Plaintiff's Eighth Amendment
causes of action against all other Defendants and all other causes of action against
Defendants Crespo, Scharr, Covello, Garcia, and Marientes.   *See id.* at 20.   The Court
granted Plaintiff leave to amend, noting that, "[s]hould Plaintiff elect not to file an amended
complaint by that deadline, this action will proceed on Plaintiff's surviving causes of
action."   *Id.* at 21.

Plaintiff elected not to file an amended complaint. Defendants answered the SAC on November 15, 2019. *See* ECF No. 95. Defendants subsequently filed the instant Motion on November 4, 2020. *See* ECF No. 181. Following full briefing, on June 18, 2021, Judge Butcher issued his R&R, setting a July 9, 2021 deadline for objections thereto. *See* R&R at 20. On July 12, 2021, the Court issued an Order adopting the R&R, to which no objections had been received as of that date, having satisfied itself that the R&R contained no clear error. *See* ECF No. 235. However, timely Objections from Plaintiff were entered onto the Docket on July 16, 2021. *See* ECF No. 236. Thereafter, the Court extended the deadline to file any reply to Plaintiff's Objections, and noted that, "[i]n due course, the Court will issue an order vacating the Order and ruling on the R&R, Plaintiff's Objections, and any reply thereto." *See* ECF No. 237 at 2.

## LEGAL STANDARDS

### I.   Report and Recommendation

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties in connection with a magistrate judge's R&R. The district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). However, in the absence of timely objection, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

### II.   Summary Judgment

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact.  *Id.* (quoting Fed. R. Civ. P. 56(c)).  When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).  "This is true, even when the party against whom the motion for summary judgment is directed has not filed any opposition."  *Cristobal v. Siegel*, 26 F.3d 1488, 1495 (9th Cir. 1994) (citing *Sheet Metal Workers' Int'l Ass'n. v. Nat'l Labor Relations Bd.*, 716 F.2d 1249, 1254 (9th Cir. 1983)).  "[W]here no evidence is presented in opposition to the motion, summary judgment should not be granted if the evidence in support of the motion is insufficient."  *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 967 (9th Cir. 1981) (citations omitted).

## III.    42 U.S.C. § 1983/First Amendment Retaliation

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that (1) the defendant was acting under color of state law at the time the complained of act was committed, and (2) the defendant's conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).  Under Section 1983, a defendant deprives

another of a constitutional right if the defendant "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis and alterations in original) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.* Accordingly, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680–81 (9th Cir. 1984)).

According to the Court of Appeals for the Ninth Circuit:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (citations and footnote omitted).

## ANALYSIS

### I. Summary of the R&R and Plaintiff's Objections Thereto

Defendants seek summary judgment on all remaining claims pending in this matter (*i.e.*, First Amendment retaliation claims). *See* R&R at 8. The R&R initially concludes that Plaintiff's claims for legal mail interception, e-filing interference, and prison lockdown are not viable because Plaintiff fails to identify the specific Defendants who allegedly committed these actions. *Id.* at 10.

To the extent Plaintiff seeks to bring the aforementioned claims against Paramo, the R&R finds that Paramo's declaration specifically denying these charges makes a prima

facie showing of entitlement to summary judgment and shifts the burden to Plaintiff; Plaintiff, however, fails to provide any evidence to raise a genuine issue of material fact as to these issues. *Id.* at 10–11. As to Plaintiff's claims against Paramo for failure to investigate and prevent constitutional violations, the R&R concludes that the undisputed evidence establishes that Paramo had no knowledge that any of his subordinates were violating Plaintiff's constitutional rights. *Id.* at 11–13. The R&R further finds that Paramo is entitled to qualified immunity because the undisputed facts establish that he did not violate any clearly established constitutional rights of Plaintiff. *Id.* at 18–19. Accordingly, the R&R recommends granting Paramo's Motion in its entirety. *Id.* at 20.

As to Plaintiff's claims against Zendejas, the R&R finds that Plaintiff's claim that Zendejas retaliated against Plaintiff by coercing another correctional officer to ransack Plaintiff's cell fails because the SAC fails to cure the inadequacies of pleading that previously resulted in dismissal of the claim and Plaintiff fails to rebut Zendejas's declaration that she had no involvement in the incident. *Id.* at 13–14. Regarding Plaintiff's claim that Zendejas pointed a rifle at him in retaliation for complaints Plaintiff wrote to Zendejas's superiors about her and because an earlier RVR she issued was reduced to a "counseling chrono," the R&R concludes that Zendejas's declaration that she never pointed a Ruger Mini 14 semiautomatic rifle at Plaintiff is overly specific and leaves open the possibility that she pointed some other type of rifle at Plaintiff; meanwhile, Plaintiff's sworn affidavit that Zendejas did point a rifle at him is sufficient to place the issue in dispute. *Id.* at 14–16. Further, the R&R finds that Zendejas fails to offer any evidence to establish the absence of a material fact regarding Plaintiff's allegation that she pointed a rifle at him in retaliation for his protected conduct. *Id.* at 16–17. Finally, the R&R concludes that Plaintiff fails to present any evidence rebutting Zendejas's declaration explaining the circumstances concerning the January 15, 2018 RVR she issued and the legitimate penological objective underlying the same. *Id.* at 17–18. Because the undisputed facts establish that Zendejas did not violate any clearly established constitutional right with regard to Plaintiff's cell search and RVR retaliation claims, the

R&R concludes that Zendejas is entitled to qualified immunity for those claims.  *Id.* at 18–19.  However, the R&R finds that Zendejas is not entitled to qualified immunity for the claim that she pointed a rifle at Plaintiff, as clearly established law holds that a law enforcement officer pointing a gun at an individual without justification violates the Constitution.  *Id.* at 19.  Accordingly, the R&R recommends granting Zendejas's Motion as to two of the three claims against her and denying her Motion as to the third claim.  *Id.* at 20.

Plaintiff broadly asserts that he "respectfully objects (disagrees) with all Magistrates [sic] statements and assertions therein his Report and Recommendation (R+R), except for his denial of defendant Zendejas's Motion for Summary Judgment (MSJ) of Plaintiff's claim that Zendejas pointed a gun at him on November 9, 2017."  Objs. at 1.

Specifically, Plaintiff first objects to the R&R to the extent it does not accept as established fact that he was deaf and/or hearing impaired.  Objs. at 2–3.  In this regard, Plaintiff questions why the R&R does not accept the allegations in his Second Amended Complaint as evidence but accepts statements in Paramo's declaration about RJDCF staff member Covello's actions, who did not himself submit a declaration.  *Id.* at 2.  He also points to medical and Social Security Administration records that he claims establish his deafness, "which clearly shows the prejudice in the R+R decisions."  *Id.* at 3.

Second, Plaintiff objects to the R&R's conclusion that Plaintiff fails to state a claim as to Paramo and urges that, "since this Court already ruled Defendant Paramo was liable for violating Plaintiff's First Amendment rights . . . , it would be 'highly' suspect and seeming prejudicial to reverse their prior decision under such suspicious circumstances."  *Id.* at 5–6.  Specifically, Plaintiff objects to the R&R's statement that "[i]in or around 2012, Plaintiff filed a 'Civil Rights complaint' against Paramo that is pending 'in another court.'"  Objs. at 4; R&R at 3 (citation omitted).  Plaintiff notes that his 2012 civil rights complaint was filed against a different CDCR official.  Objs. at 4.  Plaintiff also objects to the R&R's statement that Paramo "had 'no knowledge' of Plaintiff's complaint (page 5 bottom of R+R) because he allegedly assigned matter to staff Covello."  *Id.*  Plaintiff claims this is

14

nonsensical "because if Paramo had no knowledge of Plaintiff's complaint how/why would he assign it (case) to another staff?" *Id.* Further, Plaintiff advances his belief that "Paramo is not being forthright in his declaration" because Paramo, as the warden, was ultimately responsible and it would be a "dereliction of duty" for him to delegate a matter without following up on its status. *Id.* at 4–5. Plaintiff also claims he "was never interviewed by a Lt. Ortiz concerning Zendejas conduct," as Paramo's declaration claims, and thus Paramo's declaration is "suspect" since there are no corroborating declarations from Lt. Ortiz or Covello. *Id.* at 7. Plaintiff claims that "another court already ruled RJDCF official [sic] do in fact generate 'phoney' documents to substantiate their false claims against complaining inmates, especially ADA inmates." *Id.* at 8 (citing *Armstrong v. Newsom*, 484 F. Supp. 3d 808 (N.D. Cal. 2020)). Ultimately, Plaintiff claims "[t]here is a 'genuine dispute' as to whether Paramo knew of Plaintiff's allegations of abuse by Defendant Zendejas." *Id.* at 12.

Third, Plaintiff objects to the R&R's conclusions about Zendejas's January 12, 2018 RVR given that "this Court has already rendered a decision" on that claim, and thus the R&R's findings "undermine this Court[']s justice (Sammartino) by basically 'mocking' her decision." *Id.* at 8. Plaintiff further argues that, "even if this Court did not rule against Defendant Zendejas in said matter, the matter is a 'genuine dispute' of facts, therefore, this Court can not rule on the matter via summary judgment." *Id.* at 13 (citation omitted).

Fourth, Plaintiff objects to the R&R's determinations of qualified immunity as to Paramo and Zendejas, arguing that qualified immunity "<u>only</u> protects government officials from liability for civil damages insofar as their conduct <u>does not</u> violate clearly established statutory or constitutional rights." *Id.* (citations omitted) (emphases in original). Plaintiff reiterates many of the arguments made above in contesting the propriety of qualified immunity as to Paramo. *Id.* at 14.

Finally, Plaintiff notes that "[o]ther courts have already ruled that RJDCF officials do in fact, 'retaliate' against inmates who file complaints," *id.* at 10 (citing *Armstrong*, 484 F. Supp. 3d 808), and complains that the R&R "disregard[s] the fact that," after Plaintiff

filed his grievances and his complaint, "a 'lockdown' occurred and 'strip search' ensued on all inmates at RJDCF, as if it was a coincidence, . . . although there was no uprising by inmates, no inmate fights . . . , only several grievances being filed." *Id.* at 11.  Plaintiff claims that, as of the time of the writing of his Objections, his yard "has been on 'lockdown' for 3 weeks for no given reason," and that "[t]he foregoing is RJDCF[']s sly way of punishing all (or several) inmates in 'retaliation' for other inmates['] lawsuits against them." *Id.* at 15.

The Court reviews *de novo* those portions of Judge Butcher's R&R to which Plaintiff objects and reviews for clear error the remainder of the R&R.

## II.   Analysis of Plaintiff's Objections

### A.   *The Effect of This Court's Prior Orders on the Present Motion*

As an initial matter, Plaintiff argues repeatedly throughout his Opposition and his Objections that "[t]his Court has already twice (ECF No. 30 + ECF No. 85) ruled that [Defendants] violated Plaintiff[']s First Amendment Rights."  Opp'n at 4; *see also, e.g.*, Objs. at 5, 8, 9, 12–13, 15.  He thus argues that the R&R improperly "dissent[s] from this Court[']s prior ruling."  Objs. 12.

Plaintiff's understandable confusion appears to stem from a misunderstanding as to the difference between a decision on a motion to dismiss and a decision concerning a motion for summary judgment.  Courts construe a pro se inmate's filings liberally when deciding both types of motions.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that a court evaluating a pro se inmate's complaint pursuant to a Rule 12(b)(6) motion to dismiss must "construe the pleadings liberally and []afford the petitioner the benefit of any doubt") (citation and internal quotation marks omitted); *see also Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("[C]ourts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly.") (citing *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999)).  However, motions to dismiss and motions for summary judgment are fundamentally different motions subject to very different evidentiary standards, as the R&R explained in a footnote.

*See* R&R at 3 n.2 ("Unlike motions to dismiss, motions for summary judgment focus on evidence beyond the complaint and consider whether the moving party is entitled to relief. The denial of a motion to dismiss, therefore, does not preclude a later motion for summary judgment.") (internal citations omitted).

"Because Rule 12(b)(6) focuses on the 'sufficiency' of a claim rather than the claim's substantive merits, 'a court may [typically] look only at the face of the complaint to decide a motion to dismiss.'" *ING Bank, fsb v. Wah*, No. C09-1458-JCC, 2010 WL 11691443, at *2 (W.D. Wash. Aug. 26, 2010) (quoting *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)).   Thus, in assessing and ruling on Defendants' motions to dismiss in this action, the Court was looking only to the statements contained within Plaintiff's complaints and deciding whether those statements could potentially entitle Plaintiff to relief.   A plaintiff need not present any evidence to move past this stage of the litigation.   In fact, the Court generally *cannot* consider evidence.   If "matters outside the pleadings are presented to and not excluded by the court" in deciding a motion to dismiss, "the motion must be treated as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."   Fed. R. Civ. P. 12(d).

A motion for summary judgment, on the other hand, assesses whether "there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor." *Jevons v. Inslee*, No. 1:20-CV-3182-SAB, 2021 WL 4443084, at *4 (E.D. Wash. Sept. 21, 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Unlike at the motion to dismiss stage, therefore, a "mere assertion, without any evidence, is insufficient to withstand summary judgment." *Hughes v. United States*, 953 F.2d 531, 542 (9th Cir. 1992).   Rather, "[a] party opposing summary judgment must present some significant probative evidence tending to support the complaint." *Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 971 (9th Cir. 1983) (citations and internal quotation marks omitted).

/ / /

All of this is to say that, although this Court has previously determined that Plaintiff has alleged sufficient facts in his pleadings to state a claim, that is a different inquiry than whether Plaintiff has accumulated and presented sufficient evidence that a jury conceivably could find in his favor on those claims. The Court's prior orders on Defendants' motions to dismiss thus have no bearing on the present Motion, and it was not an error for the R&R to reanalyze Plaintiff's claims on the merits. Accordingly, the Court **OVERRULES** Plaintiff's objection to the effect that this Court has already decided the merits of his claims.

## B.   The R&R's Decisions Concerning What Constitutes Evidence

Plaintiff objects to the R&R's statement that "[t]he Court discusses the allegations in the Second Amended Complaint to provide context for this Motion. Because Plaintiff did not sign it under penalty of perjury, the Court does not consider its allegations as evidence for purposes of this Report and Recommendation." R&R at 3 n.3 (citations omitted); *see* Objs. at 2.

"Ninth Circuit case law has not been consistent on the issue of when, if ever, a district court should consider unsworn, inadmissible material in the summary judgment analysis," but "the rule of *Fraser v. Goodale*[, 342 F.3d 1032 (9th Cir. 2003),] appears to be that where the party opposing summary judgment manifestly has personal knowledge of the unsworn, inadmissible material submitted, such that the party could present the content of the material in admissible form at trial, the court should consider the material in the summary judgment analysis." *Rosenfeld v. Mastin*, No. CV 11-7002-DOC E, 2013 WL 5705638, at *4–5 (C.D. Cal. Oct. 15, 2013) (citations omitted).

Certain matters in Plaintiff's SAC—for instance, his deafness—are unquestionably within Plaintiff's personal knowledge. Accordingly, the Court finds it appropriate to consider such matters as evidence for purposes of deciding Defendants' Motion. *See, e.g.*, *Perkins v. Angulo*, No. 3:18-CV-0850-DMS-LL, 2021 WL 948804, at *2 (S.D. Cal. Mar. 12, 2021) ("Plaintiff's Complaint [ECF No. 1] and First Amended Complaint [ECF No. 16] are not signed under penalty of perjury but contain factual allegations within Plaintiff's personal knowledge. To the extent Plaintiff could testify under oath at trial regarding his

personal knowledge, the Court will consider those statements.") (citing *Rosenfeld*, 2013 WL 5705638, at *5), *reconsideration denied*, No. 3:18-CV-0850 DMS LL, 2021 WL 1515572 (S.D. Cal. Apr. 16, 2021).   However, as to matters for which Plaintiff lacks personal knowledge, the Court will not consider such statements to be evidence for purposes of Defendants' Motion.

Plaintiff also questions why the R&R accepts certain statements in Paramo's declaration about actions undertaken by RJDCF staff member Covello, who did not himself submit a declaration.   Objs. at 2.   Plaintiff's objection is well taken.   The Paramo Declaration is signed under penalty of perjury and is therefore admissible and competent evidence *to the extent it contains statements based on Paramo's personal knowledge*.   *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge[.]").   As summarized more fully above, this includes, for instance, statements by Paramo that he "did not ignore any complaint or allegation of staff impropriety, harassment, or retaliation that Plaintiff, inmate Mychal Reed, made," Paramo Decl. ¶ 2; "never placed Donovan on lockdown because Mr. Reed contacted the Office of Internal Affairs regarding any civil litigation that he may have filed," *id.* ¶ 3; "also never interfered with Mr. Reed's ability to electronically file a civil complaint, and . . . never intercepted Mr. Reed's legal mail," *id.* ¶ 5; "was not provided any information that there was any wrongdoing or false reporting regarding Mr. Reed's Rule Violation Report," *id.* ¶ 8; "determined that [Appeal Number RJD-D-17-6991] should be referred to Chief Deputy Warden Covello for an Appeal Inquiry," *id.* ¶ 14; "was not provided with any information that showed that any correctional officer acted improperly with regard to Mr. Reed's allegations in appeal number RJD-D-17-6991," *id.* ¶ 16; "determined that [Appeal Number RJD-D-17-07453] should be processed as a routine appeal" and "was not provided with any information that showed that Correctional Officer Zendejas acted improperly with regard to the allegations in appeal number RJD-D-17-07453," *id.* ¶ 17; and "never retaliated against Mr. Reed at any time or for any reason" or "fail[ed] to supervise or correct any improper staff behavior toward Mr. Reed," *id.* ¶ 18.

However, to the extent Paramo declares certain facts that happened on information and belief, the statements are not evidence for purposes of deciding Defendants' Motion. For example, Paramo's statements about the inquiries as to Appeal Numbers RJD-D-17-05958 and -06786, of which Paramo notes "[he] had no knowledge . . . because Chief Deputy Warden Covello reviewed [them] on [Paramo's] behalf," *id.* ¶¶ 6, 9, and his statements about the inquiries as to Appeal Numbers RJD-D-17-6991, as to which Paramo notes "[he] had no further personal involvement . . . after delegating the Appeal Inquiry to Chief Deputy Warden Covello," *id.* ¶ 15, are not based on Paramo's personal knowledge. Accordingly, such statements do not themselves evidence the absence of a genuine issue of material fact for purposes of Defendants' Motion. *Cf. Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991) ("Because Irwin's declaration is not based on personal knowledge, but on information and belief, his statement does not raise a triable issue of fact regarding antitrust injury.") (citing *Taylor v. List*, 880 F.2d 1040, 1045 n.3 (9th Cir. 1989)), *aff'd*, 508 U.S. 49 (1993). Accordingly, the Court agrees with Plaintiff that, to the extent Defendants attempt to address the handling of various investigations and inquiries into Plaintiff's complaints through the Paramo Declaration, Defendants have failed to provide competent evidence at this stage of the litigation.

Thus, the Court **SUSTAINS** Plaintiff's objection as to what the R&R considered to be "evidence" for purposes of deciding the Motion. However, for the reasons provided *infra* at 21–27, this ultimately does not alter the outcome of Defendants' Motion.

### C.   *Effect of* Armstrong v. Newsom

The Court finds it appropriate to next address Plaintiff's argument that *Armstrong*, 484 F. Supp. 3d 808, "proves conclusively that Defendants did 'retaliate' against Plaintiff pursuant to RJDCF's standard of operation." Opp'n at 6.

*Armstrong* concerns prison officials' retaliation against a class of disabled inmates in violation of the Americans with Disabilities Act and prior court orders. *See generally* 484 F. Supp. 3d 808. Here, Plaintiff does not allege that Defendants retaliated against him

by reason of his deafness; rather, Plaintiff claims that Defendants retaliated against him because of his First Amendment-protected grievances and complaints. *See generally* SAC. Accordingly, while *Armstrong* establishes a pattern of retaliatory conduct by RJDCF officials as to inmates seeking reasonable accommodations for their disabilities and orders CDCR to "develop mechanisms to end and prevent any retaliation against class members who report violations of their rights under the [consent decree] or ADA and to ensure their safety," 484 F. Supp. 3d at 852, the Court finds *Armstrong* to be of limited probative value in establishing a pattern or practice of retaliatory conduct in other contexts—for example, with regard to an inmate's assertion of his First Amendment rather than ADA rights.

Accordingly, the Court **OVERRULES** Plaintiff's objection on this ground.

### D. *Defendant Paramo's Liability*

Plaintiff contests the R&R's determination that the undisputed evidence establishes that there is no material issue of genuine fact as to Paramo's liability for retaliation, warranting the granting of summary judgment in Paramo's favor. *See generally* Objs. Plaintiff claims that Paramo retaliated against him by instituting a prison lockdown, intercepting Plaintiff's legal mail, interfering with Plaintiff's e-filing capabilities, and ignoring or failing to investigate Plaintiff's complaints concerning Zendejas. The Court addresses each basis for Paramo's liability in turn.

#### 1. *Lockdown*

Even assuming a lockdown did occur as Plaintiff alleges,[2] the Court finds that the evidence does not raise a genuine issue of material fact as to the third element of Plaintiff's retaliation claim—namely, that the act was undertaken because of Plaintiff's First Amendment-protected activity. Paramo declares that lockdowns must be reported and are highly scrutinized, making it virtually impossible to institute a lockdown for retaliatory

---

[2] Plaintiff objects to the R&R for allegedly "disregard[ing]" the lockdown that occurred after Plaintiff filed his grievances and the instant action. Objs. at 11. The R&R, however, acknowledges the alleged lockdown. *See* R&R at 5. Accordingly, the Court **OVERRULES** Plaintiff's objection; nonetheless, the Court engages in a *de novo* analysis of Plaintiff's claims against Paramo.

purposes.  Paramo Decl. ¶ 4.  He further declares he never placed RJDCF on lockdown because of Plaintiff's complaints of misconduct.  *Id.* ¶ 3.

Plaintiff fails to counter with any evidence beyond his own subjective belief that the lockdown was retaliatory, simply claiming that "there was no uprising by inmates, no inmate fights (not on Plaintiff's Yard 'D'), only several grievances being filed by inmates against c/o's for abuse, retaliatory conduct and sadistic conduct, all while Defendant Paramo was warden who is the only superior staff that can call a complete 'lockdown' of the facility." Objs. at 11.  Paramo's Declaration establishes, however, that there are other possible reasons a lockdown might be instituted, for example, "following very serious threats to institutional security and the safety of staff and inmates, such as . . . credible reports of a death threat against a correctional officer."  Paramo Decl. ¶ 3.  Plaintiff's unsupported statements are therefore insufficient to counter the evidence put forward by Defendants that it is simply not feasible to institute a lockdown for an improper purpose and that Paramo did not do so in this instance.

Accordingly, the Court finds that, even construing all evidence and reasonable inferences in Plaintiff's favor, Plaintiff fails to raise a genuine issue of material fact as to whether Paramo retaliated against him by instituting a lockdown and **GRANTS** Defendants' Motion as to this claim.

### 2.    *Interception of Mail and E-filing Interference*

Paramo declares categorically that he never intercepted Plaintiff's mail and never interfered with Plaintiff's e-filing capabilities.  Paramo Decl. ¶ 5.  Again, Plaintiff fails to come forward with any evidence to the contrary, instead relying on innuendo and unsupported inferences.  Thus, the Court concludes that Plaintiff fails to raise a genuine issue of material fact as to whether Paramo retaliated against him by intercepting Plaintiff's mail or preventing the e-filing of Plaintiff's Complaint in this action and **GRANTS** Defendants' Motion as to this claim.

/ / /

/ / /

### 3.   *Failure to Investigate/Supervise*

Finally, Plaintiff claims that Paramo retaliated against Plaintiff because Paramo knew about Zendejas's behavior as a result of Plaintiff's letters to Paramo, but Paramo failed to adequately investigate, or supervise the investigation of, Plaintiff's complaints. Assuming, without deciding, that Paramo did, in fact, receive Plaintiff's letters notifying Paramo of Plaintiff's complaints against Zendejas, and even construing all facts and inferences in Plaintiff's favor, the Court finds that Plaintiff fails to raise a genuine issue of material fact as to this claim.

First, the record presently before the Court does not support an inference that Paramo inadequately investigated Plaintiff's grievances, and thus Plaintiff fails to establish the requisite adverse action to satisfy the first element of his retaliation claim. Paramo declares that he did not ignore any complaints of staff impropriety made by Plaintiff. Paramo Decl. ¶ 2. He declares he did not fail to have such complaints investigated or supervise subordinates with regard thereto. *Id.* He declares he was never presented with any evidence to support Plaintiff's complaints, and that he never failed to investigate or remediate a situation at RJDCF involving staff improprieties that was brought to his attention. *Id.* He declares that RJDCF's regulations allow the warden to delegate the responsibility of processing an appeal and reviewing the Second Level Response to subordinates. *Id.* ¶ 8.

Regarding Appeal RJD-D-17-05958, concerning the September 2017 incident, Paramo declares that the appeal was assigned to Chief Deputy Warden Covello. *Id.* ¶ 6. While Paramo's name and title appear on the Second Level Response, Chief Deputy Warden Covello signed the response for Paramo. *Id.* ¶ 8. Paramo was never informed of any findings or evidence of wrongdoing resulting from this Chief Deputy Warden Covello's investigation and the Second Level Response. *Id.*

Regarding Appeal RJD-D-17-6991, concerning the November 2017 incident, Paramo declares that he was aware of the appeal because, upon reviewing a Memorandum regarding the appeal, he referred it to Chief Deputy Warden Covello for an Appeal Inquiry

23

to be carried out by supervisory staff. *Id.* ¶ 14. Thereafter, Paramo was never informed of any evidence of staff wrongdoing uncovered by the inquiry. *Id.* ¶ 16.

Regarding Appeal RJD-D-17-07453, the December 2017 group appeal joined by Plaintiff concerning Zendejas's conduct, Paramo again declares that he was made aware of the appeal when he reviewed a Memorandum regarding the appeal and determined it should be processed as a routine appeal. *Id.* ¶ 17. Thereafter, Paramo was never informed of any evidence of wrongdoing uncovered by the appeal. *Id.*

Accordingly, Paramo has come forward with evidence that he appropriately delegated the investigation of Plaintiff's complaints according to RJDCF regulations, and that the investigations never resulted in any findings of wrongdoing that were subsequently brought to his attention. Plaintiff has failed to come forward with any evidence to rebut this evidence provided by Paramo.[3] The letters Plaintiff received after writing to Paramo merely counsel Plaintiff to proceed with his appeals, which ultimately determined that RJDCF staff had engaged in no wrongdoing. Thus, the evidence does not plausibly support any inference that Paramo knew any of his subordinates had engaged in unlawful behavior and wrongfully failed to investigate such claims. Nor can Paramo be held liable in a supervisory capacity for this claim, as no reasonable jury could conclude, even viewing the evidence and reasonable inferences in Plaintiff's favor, that Paramo was personally involved in any of his subordinates' alleged constitutional violations or knowingly set in motion or failed to terminate such actions. *See Manning v. King Cty. DAJD*, No. C18-1568-JCC-MAT, 2019 WL 7593238, at *8 (W.D. Wash. Dec. 5, 2019), *report and*

---

[3] Plaintiff claims it is "contridictive [sic]" for the R&R to state that "Paramo had 'no knowledge' of Plaintiff's complaint," because "how/why would he assign it (case) to another staff?" Objs. at 4. However, the R&R states that Paramo had no knowledge of only certain matters. *See* R&R at 5. It then notes that Paramo assigned the grievance concerning the November 9, 2017 gun-pointing incident to Chief Deputy Warden Covello to investigate. *Id.* The Court finds there is no contradiction given that the R&R is discussing different incidents—a point made clear later in the R&R, *see id.* at 11 ("Paramo declares he lacked knowledge of the handling of certain appeals and had minimal to no role in the handling of others.") (citation omitted)—and therefore **OVERRULES** Plaintiff's objection on this ground.

*recommendation adopted*, No. C18-1568-JCC, 2020 WL 247163 (W.D. Wash. Jan. 16, 2020).

Second, even were the first element of a retaliation claim satisfied, Plaintiff's claim nonetheless falters on the second element—that Paramo failed to properly investigate Plaintiff's grievances because of Plaintiff's First Amendment-protected activity. Paramo declares categorically that "[he] never retaliated against [Plaintiff] at any time or for any reason." Paramo Decl. ¶ 18. Plaintiff fails to come forward with any evidence of retaliatory animus to rebut this statement. Accordingly, the Court finds that judgment in Paramo's favor is appropriate on this claim and **OVERRULES** Plaintiff's objection.

### E.   *Defendant Zendejas's Liability*

Plaintiff objects to the R&R's recommendation that summary judgment be granted as to Plaintiff's claims that Zendejas coerced Ochoa to ransack Plaintiff's cell and falsely issued the January 2018 RVR for an incident that did not happen. Objs. at 8.

Zendejas, through her declaration, has provided evidence that she was not involved in Ochoa's decision to enter and search Plaintiff's cell. Zendejas Decl. ¶ 3. She declares she never asked or coerced Ochoa to "trash" Plaintiff's cell. *Id.* Plaintiff fails to rebut this evidence with anything more than supposition that Ochoa must have been coerced because Plaintiff had always had a good relationship with him prior. MSJ Ex. E at 129. But the Court does not find this to be a plausible inference, and Plaintiff presents no evidence from his personal knowledge to rebut Zendejas's statements made from personal knowledge. Accordingly, the Court finds, construing all evidence and reasonable inferences drawn therefrom in Plaintiff's favor, that judgment in Zendejas's favor is appropriate as to Plaintiff's claim that Zendejas coerced Ochoa into trashing Plaintiff's cell in order to retaliate against Plaintiff.

As to whether Zendejas retaliated against Plaintiff by fabricating an RVR for an encounter with Plaintiff that did not happen in January 2018, Zendejas comes forward with her sworn testimony that the incident did, in fact, occur as she set forth in her RVR. Zendejas Decl. ¶ 4. She further declares that she had a penological objective in issuing the

RVR: "to maintain an appropriate level of order and discipline between [herself] and Mr. Reed." *Id.* ¶ 5. Namely, Zendejas explains that "[i]t is not uncommon for inmates to challenge a correctional officer's authority, especially a female correctional officer like [her], in subtle ways, and then increase their disobedience during subsequent interactions." *Id.* "This ultimately leads to the correctional officer being ineffective in maintaining order and discipline . . . . The officer's safety, and that of the other inmates and the institution could be seriously jeopardized if the inmates believe that they do not have to obey the correctional officer's orders." *Id.* Zendejas also asserts that "[she] had no knowledge that Mr. Reed sent any letters to the Warden, or to anyone else, complaining about [her], and [she] never took any adverse action against Mr. Reed because of any complaint he made about [her] or anyone else." *Id.* ¶ 2. Plaintiff, on the other hand, avers that the January 2018 incident never happened. Objs. at 8.

Defendants do not appear to contest that Plaintiff's complaints about Zendejas constitute protected First Amendment activity. *See Jones v. Williams*, 791 F.3d 1023, 1035–36 (9th Cir. 2015). Nor do they appear to contest that the alleged wrongdoing would have a chilling effect on an inmate's exercise of his First Amendment rights. Drawing all inferences and viewing all evidence in Plaintiff's favor, Plaintiff's claim that the incident did not happen does raise a genuine issue of material fact as to the first element of his retaliation claim—namely, whether Zendejas took some adverse action against him. However, as to the second element, that Zendejas took the action "because of" Plaintiff's protected conduct, Zendejas states that she was unaware of Plaintiff's complaints. Plaintiff fails to come forward with any evidence to rebut this statement. Thus, even construing all evidence and inferences in Plaintiff's favor, the Court finds that no genuine issue of material fact exists as to Zendejas's liability for this incident.

In light of the foregoing, the Court finds that judgment in Zendejas's favor is appropriate on Plaintiff's claims that Zendejas coerced Ochoa to ransack Plaintiff's cell and falsely issued the January 2018 RVR and **OVERRULES** Plaintiff's objection on this ground.

### F.    Qualified Immunity

In objecting to the R&R's determination that Paramo and Zendejas are entitled to qualified immunity for the above, Plaintiff appears to focus on the merits of the alleged constitutional violations. *See* Objs. at 13–15. For the reasons provided above, however, the Court finds that there is no genuine issue of material fact as to Paramo's liability for any claim or Zendejas's liability for the alleged ransacking of Plaintiff's cell by Ochoa or the January 2018 RVR.

"In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right, and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Courts may "exercise sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. If either prong is dispositive, the court need not analyze the other prong. *See id.* at 236–37.

Here, because the Court has found that there was no constitutional violation occasioned by the incidents identified above, the Court need not assess whether the law was "clearly established." Rather, "[t]he Court concludes that Defendants [Paramo] and [Zendejas] are entitled to qualified immunity on the ground that the allegations of the SAC fail to make out a constitutional violation." *Perez v. United States*, 103 F. Supp. 3d 1180, 1206 (S.D. Cal. 2015) (citation omitted). Accordingly, the Court **OVERRULES** Plaintiff's objection on this ground.

## III.    Analysis of the Remainder of the R&R

Neither Plaintiff nor Defendants object to the remainder of Judge Butcher's R&R, including, *inter alia*, the R&R's conclusion that a genuine issue of material fact exists as to Plaintiff's claim that Zendejas pointed a gun at Plaintiff on November 9, 2017, *see* R&R at 14–17, or the R&R's recommendation that summary judgment be granted as to Plaintiff's claim that Zendejas compelled Correctional Officer Ochoa to "trash" Plaintiff's

cell due to Plaintiff's failure to correct the pleading deficiencies previously identified by this Court as to that claim, *see id.* at 13–14.  Having found no clear error, the Court **ADOPTS** the remainder of the R&R.

## CONCLUSION

In light of the foregoing, the Court **SUSTAINS IN PART AND OVERRULES IN PART** Plaintiff's Objections (ECF No. 236), **ADOPTS IN PART AND REJECTS IN PART** Judge Butcher's R&R (ECF No. 234), and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment (ECF No. 181).  Specifically, the Court **DENIES** Defendants' Motion as to Plaintiff's First Amendment retaliation claim against Defendant Zendejas premised upon the November 11, 2017 incident but **GRANTS** the Motion in all other respects.  The Court **VACATES** its July 12, 2021 Order adopting the R&R (ECF No. 235), which issued before Plaintiff's timely Objections were docketed.

In light of the Court's disposition, the Parties **SHALL CONFER** and **SHALL FILE** a proposed schedule of pretrial dates and deadlines within thirty (30) days of the date on which this Order is electronically docketed.  Further, in light of the Court's partial denial of Defendants' Motion and given that Plaintiff is proceeding *in forma pauperis*, *see* ECF No. 8, the Court will entertain a motion for appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Should Plaintiff wish to file a motion for appointment of counsel, Plaintiff **SHALL FILE** his motion within thirty (30) days of the date on which this Order is electronically docketed.

**IT IS SO ORDERED.**

Dated:  May 27, 2022

Hon. Janis L. Sammartino
United States District Judge